IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

NATE VILLAGE OF EYAK, et al.,   )
                                 )
                    Plaintiffs,  )
                                 )
        vs.                      )
                                 )
CARLOS GUTIERREZ, Secretary of   )
Commerce,                        )
                                 )   No. 3:98-cv-0365-HRH
                    Defendant.   )
_____)

O R D E R

Motion for Summary Judgment

Defendant moves for summary judgment.[1] This motion is opposed.[2] Oral argument was requested and has been heard.

Background

Plaintiffs are the Alaska Native Villages of Eyak, Tatitlek, Chenega,[3] Nanwalek,[4] and Port Graham, all of which claim non-

---

[1] Clerk's Docket No. 74.

[2] Clerk's Docket No. 77.

[3] The court's docket lists this village as "Chanega," which is another name by which this village is known.

[4] The Native Village of Nanwalek was formerly known as English
(continued...)

- 1 -

exclusive hunting and fishing rights in the outer continental shelf (OCS).[5]  The villages of Tatitlek, Chenega, and Eyak are located in the Prince William Sound region.  The villages of Nanwalek and Port Graham are located at the tip of the Lower Kenai Peninsula near the confluence of Cook Inlet and Kachemak Bay.  Defendant is Carlos Gutierrez,[6] the Secretary of Commerce, who, pursuant to the Fishery Conservation and Management Act, 16 U.S.C. §§ 1801-1883, manages fisheries in a two-hundred-mile belt of ocean waters known as the Exclusive Economic Zone (EEZ).[7]

Plaintiffs originally filed suit in 1995, asserting <u>exclusive</u> aboriginal hunting and fishing rights on the OCS.  This suit was captioned <u>Native Village of Eyak v. Trawler Diane Marie, Inc.</u>, Case No. A95-0063-CV (HRH) and was filed against the Secretary of Commerce and others.  Plaintiffs alleged that they were entitled to exclusive use and occupancy of their respective areas of the OCS,

---

[4](...continued)
Bay.

[5]The OCS is "all submerged lands lying seaward and outside of the area of lands beneath navigable waters as defined in section 1301 [of the Submerged Lands Act], and of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control[.]" 43 U.S.C. § 1331(a).

[6]Carlos Gutierrez is substituted for his predecessor pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure.

[7]The areas of the EEZ and OCS overlap but are not identical. These areas lay beyond the State of Alaska and its territorial waters which, as a general proposition, extend three miles beyond the line of low tide or bay closure lines.

including exclusive hunting and fishing rights, based upon unextinguished aboriginal title. The Secretary, pursuant to the Magnuson Act and the Northern Pacific Halibut Act of 1982, had promulgated regulations in 1993 limiting access to the sablefish and halibut fisheries in the Gulf of Alaska and Lower Cook Inlet. Plaintiffs challenged these regulations on the ground that they improperly authorized non-tribal members to fish within plaintiffs' exclusive aboriginal territories while prohibiting plaintiffs' members from doing the same, absent an Individual Fishing Quota (IFQ) share. Plaintiffs requested an injunction against the Secretary's regulations and a declaration that they hold aboriginal title and exclusive aboriginal rights to use, occupy, possess, hunt, fish, and exploit the waters, and to the mineral resources within their traditional use areas of the OCS.

This court decided the aboriginal title issue on cross-motions for summary judgment, granting the federal defendants' motion and denying plaintiffs' motion. The court held that 1) federal paramountcy precludes aboriginal title in the OCS and 2) there is no exclusive aboriginal right to fish in navigable waters based on aboriginal title outside of a treaty or federal statute.

Plaintiffs appealed this court's decision to the Ninth Circuit. See Native Village of Eyak v. Trawler Diane Marie, Inc., 154 F.3d 1090 (9th Cir. 1998). On appeal, the Ninth Circuit held that "the Native Villages are barred from asserting exclusive rights to the

use and occupancy of the OCS based on unextinguished aboriginal title" because of the federal government's paramount interest in the OCS.  Id. at 1097.

Plaintiffs subsequently filed the instant suit on November 12, 1998, in which they once again challenge the 1993 halibut and sablefish regulations promulgated by the Secretary.  Plaintiffs now assert <u>non-exclusive</u> aboriginal hunting and fishing rights in the OCS.  Plaintiffs' complaint contains two counts.  In Count I of their complaint, plaintiffs allege that the Secretary's failure to protect their aboriginal rights from the adverse impact of the IFQ regulations and other halibut and sablefish regulations violate plaintiffs' non-exclusive aboriginal rights to hunt, fish, and exploit the natural resources of the OCS.  In Count II, plaintiffs allege that the same actions by defendant were in violation of the Indian Nonintercourse Act, 25 U.S.C. § 177.  Plaintiffs seek a declaration confirming their non-exclusive aboriginal hunting and fishing rights on the OCS of Alaska; an order prohibiting defendant from authorizing or permitting interference with such rights, and an order declaring void any commercial or non-commercial regulations that prevent or restrict plaintiffs' members from exercising their aboriginal rights as violative of federal common law and the Indian Nonintercourse Act.

On cross-motions for summary judgment, the court held "that plaintiffs' claim of non-exclusive aboriginal hunting and fishing

rights in the OCS cannot exist as a matter of law due to the United States' paramount sovereignty[.]"[8] The court granted defendant's motion for summary judgment in part and dismissed Count I of plaintiffs' complaint.[9] The court expressed doubts as to the viability of plaintiffs' Count II but declined to dismiss Count II because the parties had ignored Count II in their briefing on the cross-motions for summary judgment.[10]

Plaintiffs moved for reconsideration of the court's order granting defendant summary judgment and dismissing Count I of their complaint.[11] The court granted plaintiffs' motion for reconsideration.[12] Upon reconsideration, the court readopted its holding as

---

[8]Order re Cross-Motions for Summary Judgment (September 25, 2002) at 36, Clerk's Docket No. 42. In the same order, the court rejected defendant's arguments that the court did not have subject matter jurisdiction over plaintiffs' challenge to the sablefish regulations and that plaintiffs' challenge to the halibut regulations were barred by the statute of limitations. Id. at 17 and 21. The court also rejected defendant's argument that if plaintiffs had non-exclusive aboriginal hunting and fishing rights on the OCS and the EEZ, that such rights were extinguished by the Russians. Id. at 32. Finally, the court rejected plaintiffs' argument that they had acquired non-exclusive hunting and fishing rights in the OCS based on custom and prescription. Id. at 35.

[9]Id. at 36.

[10]Id. at 35-36.

[11]Clerk's Docket No. 43.

[12]Order re Motion for Reconsideration (Nov. 14, 2002) at 8, Clerk's Docket No. 49.

to Count I and dismissed Count II of plaintiffs' complaint.[13] Judgment was entered dismissing plaintiffs' complaint with prejudice.[14]

Plaintiffs appealed. The Ninth Circuit voted to hear the case en banc. The Ninth Circuit determined that it "would be greatly assisted by an initial determination by the district court of what aboriginal rights, if any, the villages have." Eyak Native Village v. Daley, 375 F.3d 1218, 1219 (9th Cir. 2004). The court of appeals vacated this court's "order granting summary judgment for defendants" and remanded "with instructions that the district court decide what aboriginal rights to fish beyond the three-mile limit, if any, the plaintiffs have." Id. The court of appeals instructed that "[f]or purposes of this limited remand, the district court should assume that the villages' aboriginal rights, if any, have not been abrogated by the federal paramountcy doctrine or other federal law." Id.

On remand, after input from the parties, the court denied the reinstated cross-motions for summary judgment[15] and established a briefing schedule for a new round of summary judgment motions.[16]

---

[13]Id.

[14]Clerk's Docket No. 50.

[15]Clerk's Docket No. 67.

[16]Clerk's Docket No. 66.

In light of the limited scope of the remand, the court instructed the parties to <u>not</u> brief the following issues:

> 1. Whether the federal paramountcy doctrine precludes plaintiffs['] claims to aboriginal rights.
> 2. Whether any federal law abrogated plaintiffs['] claims to aboriginal rights.
> 3. Whether actions by the Russian government abrogated any aboriginal rights plaintiffs might otherwise have to engage in commercial fishing.
> 4. Whether the Magnuson Act statute of limitations bars plaintiffs' challenge to the sablefish regulations in this case.[17]

Although it was contemplated that the parties would again file cross-motions for summary judgment, plaintiffs elected not to file a motion for summary judgment.[18] Defendant's motion for summary judgment on remand is now ready for disposition.

## Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there

---

[17]Order Clarifying Briefing at 2, Clerk's Docket No. 70.

[18]<u>See</u> Plaintiffs' Notice Regarding Motions for Summary Judgment, Clerk's Docket No. 73.

is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

The sole issue on remand is what aboriginal fishing rights, if any, plaintiffs have in the OCS, irrespective of how those rights might have been impacted by the paramountcy doctrine or any other federal law. Generally, aboriginal rights are considered to be the "right[s] of exclusive use and occupancy held by Natives in lands and waters used by them and their ancestors prior to the assertion of sovereignty over such areas by the United States." People of the Village of Gambell v. Clark, 746 F.2d 572, 574 (9th Cir. 1984). Aboriginal hunting and fishing rights flow from aboriginal title.[19] To establish aboriginal title, "'[t]here must be a showing of actual, exclusive and continuous use and occupancy "for a long time"

---

[19] See Cohen's Handbook of Federal Indian Law 1120 (Nell Jessup Newton et al., eds., 2005).

prior to the loss of the land.'" United States v. Pueblo of San Ildefonso, 513 F.2d 1383, 1394 (Ct. Cl. 1975) (quoting Confederated Tribes of the Warm Springs Reservation of Oregon v. United States, 177 Ct. Cl. 184, 194 (Ct. Cl. 1966)). Thus, in order to establish that they have aboriginal fishing rights in the OCS, plaintiffs must show actual, exclusive, and continuous use and occupancy of the claimed areas for a long period of time.

### Gulf of Alaska/PWS claims

In his reply brief, defendant states that he is only addressing "those issues as to which plaintiffs have failed to establish genuine issues of material fact."[20] Because plaintiffs' actual use of the OCS waters in the Gulf of Alaska is not one of "issues" that defendant addresses in his reply brief, the court deems this a concession on defendant's part that the material facts as to this issue are in dispute. In other words, the parties agree that there are material facts in dispute as to the plaintiffs' actual use of the claimed areas in the Gulf of Alaska.

But even if actual use of the waters of the OCS in the Gulf of Alaska is disputed, defendant argues that plaintiffs' Gulf of Alaska claims still fail because plaintiffs cannot show exclusive use of the areas that they claim in the Gulf of Alaska. Defendant insists that plaintiffs cannot show exclusive use because they have admitted

---

[20]Reply in Support of Defendant's Motion for Summary Judgment on Remand at 1 n.1 , Clerk's Docket No. 84.

that several individual governmental/land owning entities used the waters of the OCS in the Gulf of Alaska.  In response, plaintiffs argue that they can show exclusive use because the Chugach are a single land-owning entity.  In the alternative, plaintiffs argue that they qualify for the "joint use" exception to the exclusivity requirement.  Under rare circumstances, "two or more tribes or groups might inhabit an area in 'joint and amicable' possession without erasing the 'exclusive' nature of their use and occupancy." <u>Strong v. United States</u>, 518 F.2d 556, 561 (Ct. Cl. 1975).

Whether or not plaintiffs are a single, land-owning entity or whether or not they qualify for a joint claim of aboriginal rights is highly factual and highly disputed, and therefore not susceptible to summary judgment.

But even if plaintiffs are a single, land-owning entity or qualify for the joint use exception, defendant argues that they still cannot establish that they have aboriginal fishing rights on the OCS in the Gulf of Alaska because they cannot show continuous use.  Defendant contends that the only evidence of actual use that plaintiffs have come forward with as to their Gulf of Alaska claims is travel to and use of Middleton Island.  Defendant further contends that it is undisputed that plaintiffs stopped using Middleton Island in the early 1900s and did not resume use until the 1950s or 1960s.

Because the evidence of actual use of the OCS in the Gulf of Alaska is disputed, the court cannot conclude that a 50- to 60-year hiatus in the evidence of any travel and/or use of high seas resources in the vicinity of Middleton Island entitles defendant to summary judgment on plaintiffs' Gulf of Alaska claims. Furthermore, the court is not convinced that such a hiatus would be fatal to plaintiffs' claim of aboriginal fishing rights. Plaintiffs must show use for a "long period of time" prior to the loss of the land.[21] The fact that plaintiffs stopped using Middleton Island for a period of 50 to 60 years does not necessarily mean that they have not shown use for a "long period of time." Finally, to the extent that defendant would have the court carve off some of plaintiffs' claims based on this hiatus, the evidence before the court is not susceptible to a decision that could in any definitive way say, "plaintiffs have rights here, but not there."

In sum, both the nature and the extent of plaintiffs' aboriginal rights on the OCS in the Gulf of Alaska are subject to a genuine dispute as to facts which are material.

### Lower Cook Inlet Claims

Defendant argues that plaintiffs cannot establish exclusive use of the areas of the OCS in Lower Cook Inlet that they claim. The

---

[21]The parties have not addressed the question of <u>when</u> plaintiffs' lost sovereignty of the land in question. Was it October 18, 1867 or some later or earlier date?

evidence before the court shows use of the claimed areas by plaintiffs, Kodiak Alutiiq, Dena'ina, Koniag, Yupik, and Alaska Peninsula Eskimos. However, as was the case with Middleton Island, the evidence as to the Lower Cook Inlet areas is not susceptible to a decision that could in any definitive way say, "plaintiffs have rights here, but not there." It would advance this case very little to say (for example) that Kamishak Bay is an area as to which plaintiffs have not established exclusive use. The facts necessary to answer the critical question here, namely how far from the immediate vicinity of the villages does the evidence suggest exclusive use, remain disputed.

In sum, both the nature and the extent of plaintiffs' aboriginal rights in the OCS in the Lower Cook Inlet are subject to a genuine dispute as to facts which are material.

Defendant next argues that he is entitled to summary judgment on plaintiffs' challenge to the sablefish regulations because plaintiffs have shown no aboriginal use of sablefish.[22] Defendant contends that plaintiffs have to show aboriginal use of sablefish in order to have an aboriginal right to fish for sablefish. This argument is based on an observation by the Ninth Circuit that "[b]oth the substantive and geographical scope of the particular

---

[22]Defendant originally made this same argument as to salmon but has conceded in his reply brief, because he does not address the salmon argument, that material facts are in dispute as to aboriginal use of salmon.

villages' rights in the OCS depends on historical aboriginal tribal practices." People of the Village of Gambell v. Babbitt, 999 F.2d 403, 407 (9th Cir. 1993). Because the substantive scope of aboriginal rights is based on aboriginal practices, defendant contends that it follows that plaintiffs do not have a right to engage in activities that they did not engage in aboriginally.

Hunting, fishing, and gathering rights are components of aboriginal title.[23] "Aboriginal, or original Indian, title over land includes the right to engage in hunting, fishing, and gathering activities."[24] With title to the land comes the right to use all the natural resources, not just specific resources. If plaintiffs are able to establish that they have aboriginal fishing rights on the OCS, those rights will include the right to fish for sablefish.

Defendant also argues that any aboriginal rights that plaintiffs might have in the EEZ and OCS are limited to subsistence rights. The court will not consider this argument because this issue is not within the scope of the Ninth Circuit's limited remand.

Lastly, defendant argues that if plaintiffs have any aboriginal rights on the EEZ and OCS, those rights are subject to federal regulation. This issue is also not within the scope of the Ninth Circuit's limited remand.

---

[23] See Cohen at 1120-21.

[24] Id. at 1120.

<u>Conclusion</u>

Defendant's motion for summary judgment is denied.

Within the next thirty days, the parties shall meet and confer to discuss their respective views of how this case should proceed. After they have met and conferred, they shall call for a status conference. The court will then schedule a status conference so that the parties may discuss with the court the results of their conference.

DATED at Anchorage, Alaska, this __1st__ day of December, 2006.

/s/ H. Russel Holland
United States District Judge