Natalie Landreth
NATIVE AMERICAN RIGHTS FUND
420 L Street, Suite 505
Anchorage, Alaska 99501
Phone: (907) 276-0680
Facsimile: (907) 276-2466
Email: landreth@narf.org

Goriune Dudukgian
ALASKA LEGAL SERVICES CORPORATION
1016 West 6th Ave., Suite 200
Anchorage, Alaska 99501
Phone: (907) 222-4524
Facsimile: (907) 279-7417

Rich de Bodo
HOGAN & HARTSON LLP
1999 Avenue of the Stars Suite 1400
Los Angeles, California 90067
Phone: 310-785-4694
Facsimile: 310785-4601

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| EYAK *et. al*,<br><br>          Plaintiffs,<br><br>v.<br><br>CARLOS GUTIERREZ, SECRETARY OF COMMERCE<br><br>          Defendant. | Case No. A98-365-CV (HRH)<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE EXPERT TESTIMONY OF MICHAEL R. YARBOROUGH** |

## I.  PRELIMINARY STATEMENT

Plaintiffs respectfully ask this Court to preclude Michael R. Yarborough from testifying as an expert witness at trial. As demonstrated below, Mr. Yarborough's proffered "expert" testimony in this case is outside his field of expertise, is not based on any independent research, and instead was formulated solely by reviewing various

historical and anthropological sources (which this Court, the trier of fact, can easily read for itself and draw its own conclusions). Thus, Mr. Yarborough's testimony does not meet the standards of Federal Evidence Rule 702.

## II. RELEVANT FACTS

Michael R. Yarborough was retained as an expert witness in this case by the Defendant "to give expert testimony on the material facts in this case from [his] perspective as an Alaskan archeologist."[1] By his own admission, Mr. Yarborough is *not* an expert in the fields of cultural anthropology, physical anthropology, or linguistics.[2]

In his expert reports, however, Mr. Yarborough has strayed far from his purported field of expertise – "Arctic archeology"[3] – and offers "expert" opinions on such various and diverse topics as: (1) the socio-political organization of the Chugach during prehistoric times;[4] (2) the self-identified territory of the Chugach during pre-historic times and the "ethnic boundaries in the region . . . during the past millennium";[5] (3) the cultural boundaries between the Chugach and neighboring Alaska Native tribes during prehistoric times;[6] (4) whether the Chugach were able to prevent the passage of other, more powerful groups through their self-identified territory in prehistoric times;[7] (5) whether the Chugach jointly and amicably used Prince William Sound;[8] (6) the nature of the relationships among the Chugach villages during prehistoric times;[9] (7) the

---

[1] Deposition of Michael R. Yarborough, attached hereto as Exhibit 1, at page 16.
[2] *See id.* at pages 17-18, 54-55.
[3] *Id.* at page 11.
[4] *See* Expert Report of Michael R. Yarborough, attached hereto as Exhibit 2, at page 6, ¶22B.
[5] *See id.* at ¶22C.
[6] *See id.* at page 7, ¶22E.
[7] *See id.* at page 6, ¶22C.
[8] *See id.* at page 7, ¶22D.
[9] *See id.*

"economic deprivation, disruption of sociopolitical organization, and disastrous losses of population" suffered by the Chugach as a result of Russian contact;[10] (8) the ethnographic information pertaining to the Chugach use of subsistence resources from prehistoric through modern times;[11] (9) the hunting-gathering lifestyle of the Chugach;[12] (10) the seaworthiness of Chugach boats;[13] (11) historical travel routes used by the Chugach between Prince William Sound and Cook Inlet and between Cook Inlet and Kodiak;[14] and (12) the historical accounts of Russian explorers in Prince William Sound and Cook Inlet.[15]

The reason Mr. Yarborough downplays archeology in his expert reports, and focuses instead, almost exclusively, on the fields of history and cultural anthropology is because, as Mr. Yarborough conceded at his deposition, it is *impossible* for an archeologist to reach any meaningful conclusions about the main issue in this case, i.e., whether the Chugach hunted and fished on Outer Continental Shelf waters during prehistoric times. As. Mr. Yarborough stated: "I think, to be most correct, I think from archeological evidence, you can't prove or disprove use of the EEZ."[16]

The Defendant perhaps could have retained a historian or cultural anthropologist to offer expert testimony on the twelve topics above.[17] Instead, the Defendant hired an "Arctic archeologist," who attempted to compensate for his lack of expertise in these

---

[10]   *See id.* at ¶22F.
[11]   *See id.* at ¶22G.
[12]   *See id.* at ¶22H.
[13]   *See id.* at ¶22I.
[14]   *See* Supplemental Expert Report of Michael R. Yarborough, attached hereto as Exhibit 3, at page 2, ¶5.
[15]   *See id.* at ¶¶6-10.
[16]   Exhibit 1 at page 117.
[17]   Plaintiffs note that Defendant does have a cultural anthropologist, Dr. Steven Langdon, on its witness list.

areas by conducting a literature review and basing his opinions entirely on a what he learned therefrom: "My research and analysis as an expert witness . . . has focused on the anthropological and historical literature on traditional aboriginal use of the waters and biological resources of the Exclusive Economic Zone (EEZ) from Kayak Island to Lower Cook Inlet . . . ."[18]

### III.  LEGAL ARGUMENT

The U.S. Supreme Court has imposed a "gatekeeping obligation" that requires trial courts to actively screen testimony proffered by expert witnesses and to ensure that expert opinions meet "exacting standards of reliability."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  A trial court must preclude expert testimony if the reasoning or methodology underlying the testimony is unreliable or otherwise scientifically invalid. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). Federal Rule of Evidence (FRE) 702 embodies the principles of *Kumho Tire* and *Daubert* and provides that a "witness qualified as an expert by knowledge, skill, experience, training, or education" may offer opinion testimony if, and only if, "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

In this case, the expert opinions proffered by Mr. Yarborough do not meet the requirements of FRE 702 and should thus be precluded by this Court.  First, Mr. Yarborough does not have the appropriate qualifications – specialized knowledge, skill, experience, training, or education – *with respect to the subject matter of his proffered*

---

[18]  Exhibit 2 at page 2, ¶7.

*expert testimony*. It is well settled that a person, although qualified as an expert in one field of expertise, should be precluded from offering opinions going beyond that area of expertise. *See, e.g., Weisgram v. Marley Co.*, 169 F.3d 514, 518 (8th Cir. 1999) (holding that a city fire captain, although qualified as an expert on fire investigation and therefore qualified to testify as to his opinion that a fire started in the entryway and radiated to a sofa, was not qualified to testify as to his unsubstantiated theories of a malfunction that might have caused the fire); *Cummins v. Lyle Indus.*, 93 F.3d 362, 371 (7th Cir. 1996) (industrial engineer not permitted to render an expert opinion regarding the adequacy of warnings, the adequacy of an instruction manual, and the feasibility of alternative designs for a trim press); *Castro v. Oklahoma*, 71 F.3d 1502, 1515 (8th Cir. 1995) (questioning whether psychiatrist with one specialty may properly provide expert testimony involving another psychiatric specialty).

As detailed above, the opinions contained in Mr. Yarborough's expert reports go far beyond an analysis of the relevant archeological data.[19] Rather, Mr. Yarborough offers extensive "expert" opinions on the subjects of the history and, to a greater extent, cultural anthropology of the Plaintiffs and the Prince William Sound region. Assuming *arguendo* that Mr. Yarborough is a qualified expert in the field of "Arctic archeology," he nonetheless conceded at his deposition that he certainly is *not* an expert in cultural

---

[19] The *only* archeological data discussed by Mr. Yarborough in his expert reports are the findings of Aron Crowell (who is on Plaintiffs' witness list) and Dan Mann along the coast of the Kenai Fjords National Park, and the work of Linda Yarborough (who is on Defendant's witness list) at two sites in western Prince William Sound. *See* Exhibit 2 at ¶¶ 10-13, 15-17. Yet, Mr. Yarborough does not discuss the archeological data *at all* in the "Opinions" section of his expert report. *See id.* at ¶22.

anthropology, physical anthropology, or linguistics.[20] Thus, he should be precluded from offering any expert testimony in any of these fields.[21]

Apart from the problem with his qualifications, the methodology underlying Mr. Yarborough's opinions in this case is unreliable and a separate basis for precluding his testimony at trial. As his expert report makes clear, Mr. Yarborough's opinions are based on nothing more than his reading of "the anthropological and historical literature on traditional aboriginal use of the waters and biological resources of the Exclusive Economic Zone (EEZ) from Kayak Island to Lower Cook Inlet . . . ."[22] This Court should be very "suspicious of [such] purported expertise premised solely or primarily on a literature review." *Smith v. Rasmussen*, 57 F. Supp. 2d 736, 766 (N.D. Iowa 1999) (citations omitted), *rev'd on other grounds in* 249 F.3d 755, 758-59 (8th Cir. 2001) (affirming trial court's evidentiary ruling on admissibility of expert testimony).

In *Smith*, the issue before the court was whether sex reassignment surgery for an individual diagnosed with gender identity disorder was "experimental" and thus excluded from Medicaid coverage in Iowa. *Id.* at 763. At trial, the state Medicaid agency proffered expert testimony from a psychiatrist who had "a general psychiatric practice, with somewhat greater emphasis on child and adolescent services, based on subspecialty training . . . ." *Id.* The psychiatrist testified that the basis for his opinions regarding the treatment of gender identity disorder was "primarily a literature review conducted in preparation for his expert report, and his general knowledge of psychiatric principles based on his training and experience." *Id.* at 764. The trial court held that the

---

[20] *See* Exhibit 1 at pages 17-18, 54-55.
[21] Specifically, Mr. Yarborough should be precluded from testifying to the opinions contained in ¶¶22B-22J of his expert report and ¶¶4-10 of his supplemental report.
[22] Exhibit 2 at page 2, ¶7.

psychiatrist was unqualified to provide expert testimony, beyond the application of general psychiatric principles:

> Dr. Kavalier's lack of qualification from training or experience on issues beyond general psychiatric principles is not removed by his literature review concerning gender identify disorder and sex reassignment surgery in preparation to render his opinion in this litigation. His literature review was his only real contact with the field of diagnosis and treatment of gender identity disorder. Such a literature review, however, is an insufficient basis or methodology on which to render a reliable expert opinion.

*Id.* at 766; *see also United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999) (holding that trial court properly excluded "expert" testimony on handwriting analysis, because the proffered expert had no skill, experience, training, or education in the field of handwriting analysis, even though he had reviewed the literature in the field of questioned document examinations and then coauthored a law review article critical of forensic document examiners' ability to reach the correct conclusion in questioned document examinations); *Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F. Supp. 2d 465, 470 (M.D.N.C. 2006) ("Where proffered expert testimony is not based on independent research, but instead on . . . a literature review, the party proffering such testimony must come forward with other objective, verifiable evidence that the testimony is based on scientifically valid principles.") (internal quotation marks omitted); *Mancuso v. Consolidated Edison Co. of N.Y.*, 967 F. Supp. 1437 (S.D.N.Y. 1997) (rejecting the qualifications of a proffered "expert" concerning PCB exposure, although he was a medical doctor, because he had no experience with toxic torts and his "self-education" in the effects of PCBs was either insufficient or belied by his lack of knowledge under cross-examination); *Diaz v. Johnson Matthey, Inc.*, 893 F. Supp. 358, 372-73 (D.N.J. 1995) (disqualifying a pulmonologist from testifying that the plaintiff had a platinum

                    allergy, because the witness was not an epidemiologist or a toxicologist, had "no other qualifications other than his medical education and his years practicing as a pulmonologist," had only casually studied the literature on platinum allergy, and had never previously treated a patient suffering from platinum allergy); *Wade-Greaux v. Whitehall Labs., Inc.*, 874 F. Supp. 1441, 1476 (D. V.I.) (a witness educated as a pediatrician, pharmacologist, and toxicologist was not qualified to testify regarding the cause of birth defects, because he had merely reviewed selected literature on the subject for the purposes of litigation).

Similarly, Mr. Yarborough's expert opinions in this case are based almost entirely on a literature review, supplemented by his "experience" as an Alaskan archeologist. As he explained at his deposition:

> [The Defendant] asked me to review the body of both primary, secondary historic sources. Archeological reports that were available at that time, and other sources such as De Laguna and Birket-Smith. And some others that I'm probably not remembering at this time. *And bring my experience as an Alaskan archeologist* and someone who had worked in Prince William Sound, Kodiak, really, to form some professional opinions about how that material was relevant to this case.[23]

As such, this Court should find Mr. Yarborough's opinions to be inherently unreliable.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court preclude Michael R. Yarborough from providing *any* expert testimony in this case or, alternatively, to limit his testimony to the field of archeology.

DATED this 25th day of July 2008.

---

[23] Exhibit 1 at pages 71-72.

<u>s/nlandreth</u>

                    Natalie A. Landreth (Bar no. 0405020)
NATIVE AMERICAN RIGHTS FUND
420 L Street, Suite 505
Anchorage, Alaska 99501
Phone: (907) 276-0680
Facsimile: (907) 276-2466
Email: <u>landreth@narf.org</u>

**CERTIFICATE OF SERVICE**

I, Natalie Landreth, certify that a true and correct copy of Plaintiffs' Motion in Limine No. 1 was served on July 25, 2008 pursuant to the Court's electronic filing procedures upon the following:

Dean Dunsmore    dean.dunsmore@usdoj.gov, lorraine.carter@usdoj.gov

Beverly F. Li    beverly.li@usdoj.gov, efile_nrs.enrd@usdoj.gov

Brian McLachlan    brian.mclachlan@usdoj.gov


                              s/nlandreth