RONALD J. TENPAS
Assistant Attorney General

BRIAN A. MCLACHLAN
U.S. Department of Justice
Environment & Natural Resources Division
c/o United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Tel: (206) 553-4148
Fax: (206) 553-4067
brian.mclachlan@usdoj.gov

Attorneys for Federal Defendants
(Additional Counsel Listed in Signature Block)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| NATIVE VILLAGE OF EYAK, | ) | Case No. A98-365-CV (HRH) |
| NATIVE VILLAGE OF TATITLEK, | ) | |
| NATIVE VILLAGE OF CHENEGA, | ) | |
| (aka CHENEGA BAY), NATIVE | ) | **DEFENDANT'S PRETRIAL MOTION** |
| VILLAGE OF NANWALEK, NATIVE | ) | **ON EVIDENTIARY MATTERS** |
| VILLAGE OF PORT GRAHAM, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARLOS GUTIERREZ, Secretary | ) | |
| of Commerce, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant, Carlos Gutierrez, Secretary of Commerce, pursuant to sections 3 and 5 of the

Order for Pretrial Proceedings and Final Pretrial Conference [Docket No. 123] (the "Pretrial Order")

and Federal Rule of Evidence 104(a), hereby submits this motion *in limine* regarding objections to

witness testimony and other known or anticipated evidentiary matters. Through this pretrial motion, Defendant seeks an order that: (1) excludes as evidence any oral histories that Plaintiffs may seek to offer as proof of the truth of the matters asserted therein; (2) excludes Tracy Buck from Plaintiffs' Final Witness List; (3) limits Plaintiffs' use of Jeff Leer as a witness at trial; and (4) excludes any undisclosed evidence from Plaintiffs' affirmative case. These issues are addressed in more detail below.

## I.     EXCLUSION OF ORAL HISTORIES AS SUBSTANTIVE PROOF

Defendant moves to exclude as evidence any oral histories that Plaintiffs may seek to offer as proof of the truth of the matters asserted therein. This pretrial motion *in limine* is based on the grounds that oral histories are hearsay and thus inadmissible unless properly corroborated.

### A.     The Oral Histories Plaintiffs Seek to Introduce Constitute Inadmissible Hearsay Evidence

Rule 802 of the Federal Rules of Evidence provides that hearsay is inadmissible. FED. R. EVID. 802. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Rule 801(d) of the Federal Rules of Evidence provides:

> A statement is not hearsay if . . . [t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter withing the scope of the agency or employment, made during the existence of the relationship . . . ."

FED. R. EVID. 801(d). The rule against hearsay does not bar statements that are admitted for a purpose other than to prove the truth of the matter asserted. See, e.g., Calmat Co. v. U.S. Dept. of

Labor, 364 F.3d 1117, 1124 (9th Cir. 2004) ("If the significance of an out-of-court statement lies in the fact that the statement was made and not in the truth of the matter asserted, then the statement is not hearsay."). The Federal Rules of Evidence provide for a number of hearsay exceptions. FED. R. EVID. 803, 804.

In this case, Plaintiffs appear to seek to introduce evidence through oral histories recounted by their lay witnesses. See Plaintiffs' Final Witness List [Docket No. 137] at 2-4, 6 (see description of expected testimony of Henry Makarka, Bob James Henrichs, Herman Moonin, Nick Tenape, Simeon Kvasnikoff, Pete Kompkoff, Ken Vlasoff, and John Johnson). Plaintiffs' Final Witness List is attached hereto as Attachment 1. Such evidence constitutes hearsay, and is thus inadmissible. See Hatmaker v. Georgia Dep't of Transp., 973 F. Supp. 1058, 1065 n.3 (M.D. Ga. 1997) (finding that an affidavit which recounted stories told by a person's grandfather was hearsay); Coos (or Kowes) Bay, Lower Umpqua (or Kalawatset), & Siuslaw Indian Tribes v. United States, 87 Ct. Cl. 143, 1938 WL 4076, at *7 (1938) (stating that oral testimony of Indian witnesses detailing facts and traditions would "prove by hearsay that plaintiffs did occupy the lands claimed from time immemorial"); see also Koehler, Elizabeth, Comment, *Repatriation of Cultural Objects to Indigenous Peoples: A Comparative Analysis of U.S. and Canadian Law*, 41 INT'L LAW 103, 116 (2007) (stating that oral history – such as "stories of one's ancestry or tribal traditions, passed on from one generation to the next only by word of mouth – would be considered hearsay"). Plaintiffs appear to propose to offer substantive evidence from oral histories in order to prove the truth of the matter asserted with respect to a variety of issues, including historical patterns and practices in off-shore waters by Plaintiffs' ancestors from prehistoric times through the present, their traditional fishing and hunting techniques passed down from their ancestors, the defense of the waters they

used, and the cohesiveness of their ancestors as a socioterritorial unit.  See Plaintiffs' Final Witness List at 2-4, 6.  Plaintiffs have not shown how such evidence from oral histories would fit an exception to the hearsay rule.  For these reasons, Plaintiffs' evidence based on oral histories should not be admitted.

>       B.       The Oral Histories Plaintiffs Seek to Introduce Lack Sufficient Indicia of Reliability

To the extent Plaintiffs rely on contemporary or recent oral accounts to establish use of the claimed area in the prehistoric and early historic periods, such evidence should be excluded because oral histories inherently lack reliability.  As oral recountings are passed down from generation to generation, they decrease in reliability.  Bonnichsen v. United States, 367 F.3d 864, 881-82 (9th Cir. 2004) (stating that "oral histories change relatively quickly," "may be based on later observation of geological features and deduction (rather than on the first teller's witnessing ancient events)," "have inevitably changed in context of transmission," and "the value of such accounts is limited by concerns of authenticity, reliability, and accuracy"); Bonnichsen v. United States, 217 F. Supp. 2d 1116, 1152 (D. Or. 2002) ("[W]e cannot know who first told a narrative, or the circumstances, or the identity of the intervening links in the chain, or whether the narrative has been altered, intentionally or otherwise, over time.  The opportunity for error increases when information is relayed through multiple persons over time."); id. at 1152-53 ("Intervening changes in language may alter meanings, as might the process of translation into other languages.  Other considerations affecting reliability of the narratives include the expertise of the source of the narrative and the circumstances under which the particular narrative was traditionally transmitted."); Zuni Tribe of New Mexico v. United States, 12 Cl. Ct. 607, 617 n. 12 (Ct. Cl. 1987) (stating that "oral recounting throughout generations decreases in reliability with each intervening generation").

Oral histories that Plaintiffs' witnesses discussed at their depositions highlight the problems of reliability with this kind of evidence, which the Ninth Circuit and other courts have identified. For example, Mr. Henrichs testified in his deposition as follows:

Q    Do you know whether the five villages would provide resources as needed in precontact times?
. . . .
A    I believe that they did, from the stories I was told.
Q    Can you tell me any specifics of these stories?
A    I have no specific instances, except that I know that people in the different villages were related to each other.
Q    And why does the fact that the people in the villages were related to each other lead you to believe that there was the provision of resources in precontact times?
A    Because there is now, and I don't think that just was a new thing.
Q    Can you explain further why you don't think it's a new thing?
A    It's been passed down from our Elders in the oral history that we share with the other people in villages that needed something.  We shared with them.  It's oral history.

Q    But you don't recall any specific stories regarding sharing of resources?
A    No, no specific instances.
. . . .
Q    When we left off before the break, we were talking about, you know, sharing of resources among the various Chugach villages in precontact times.  And as I recall, you had stated that -- that there were stories in the oral history and from the Elders about sharing of resources.  Do you recall which specific Elders you heard these stories from?
A    No.

Henrichs Depo. Tr., at 38:15-16, 38:18-39:14, 40:1-8 (attached hereto as Attachment 2).  This lack of specificity and inadequate knowledge of the intervening links in the chain of transmission casts further doubt on the reliability of oral histories that Plaintiffs may seek to introduce through their lay witnesses.

If evidence based on oral histories is not corroborated by contemporaneous documentation or historical evidence, the Court should not give such oral histories any weight.  See Coos (or Kowes) Bay, 87 Ct. Cl. 143, 1938 WL 4076, at *7 ("To establish Indian title to a vast acreage of

lands by oral testimony, irrespective of the obstacles of establishing it by any other method, exacts a decree of proof sufficient to overcome contemporaneous documentary and historical evidence to the contrary."); <u>Pueblo de Zia v. United States</u>, 165 Ct. Cl. 501, 1964 WL 8577, at *2 (1964) (where oral tradition is *corroborated*, it is entitled to some weight and cannot be discarded as "literally worthless"); <u>Confederated Tribes of Warm Springs Reservation of Oregon v. United States</u>, 117 Ct. Cl. 184, 1966 WL 8993, at *12 (Ct. Cl. 1966) ("The importance of corroboration and cross-checking cannot be undervalued since informants can mislead researchers by describing some period . . . besides the aboriginal pre-treaty period."); <u>Hatmaker</u>, 973 F. Supp. at 1065 n.3 (M.D. Ga. 1997) (finding that weight of the evidence contained in an affidavit recounting stories told by a person's grandfather was "insufficient to remand this case to the Secretary in the absence of any other concurring, verifiable information").  Plaintiffs have not shown that they can and will provide such corroborating evidence, and thus the evidence of oral histories through their lay witnesses that they seek to present should be excluded.[1]

## II.    EXCLUSION OF TRACY BUCK

Defendant moves to exclude Tracy Buck from Plaintiffs' Final Witness List.  This pretrial motion *in limine* is based on the grounds of relevance and undue burden.

Pursuant to the Pretrial Order, Plaintiffs' final witness list "shall disclose the testimony expected to be elicited from [each] witness at trial" and "[t]he disclosure shall be specific and not general."  Pretrial Order at ¶ 3.  Plaintiffs' Final Witness List disclosed Tracy Buck, an employee

---

[1]    In the alternative, even if the Court permits Plaintiffs to present evidence in the form of oral histories, the Court should exclude or give no weight to oral histories that are not corroborated by contemporaneous documentary and historical evidence.

of Defendant, and stated that she will "testify regarding Defendant's position that Plaintiffs do not possess aboriginal rights to the claimed areas." Plaintiffs' Final Witness List at no. 9 (see Attachment 1 hereto). The only other information given about Plaintiffs' proposed use of Ms. Buck is the statement that, "[i]f Ms. Buck is unavailable, Plaintiffs designate pages 25:23-26:19, 32:6-33:11, 34:15-35:13, and 75:7-76:10 of her deposition to be admitted at trial." Id. An excerpt of Ms. Buck's deposition transcript is attached hereto as Attachment 3.

Ms. Buck appeared for her deposition pursuant to Plaintiffs' 30(b)(6) deposition notice issued on May 29, 2008, to Defendant's agency the Department of Commerce. Defendant timely objected to this notice prior to the deposition on June 10, 2008, to the extent that Plaintiffs sought to use the deposition to obtain Defendant's legal positions, or selection of facts or evidence for use at trial. A copy of these objections is attached hereto as Attachment 4. Furthermore, as shown in Attachment 3, Defendant objected to all questions where Plaintiffs sought to obtain through this deposition Defendant's legal positions. As was made clear at her deposition, prior to receiving this notice, Ms. Buck has no prior involvement in this case. While Ms. Buck made a good faith effort to familiarize herself with this case and Defendant's positions therein, she could do no more than recount her understandings of the pleadings and expert reports she reviewed in connection with this case.

Plaintiffs' Final Witness List now discloses that Plaintiffs seek to use Ms. Buck as a witness only about Defendant's legal position -- specifically, "Defendant's position that Plaintiffs do not possess aboriginal rights to the claimed areas." Plaintiffs' Final Witness List at no. 9. This is improper. Defendant's legal positions for trial have been set forth in his Trial Brief [Docket No. 141] and will be elaborated on as necessary through the course of this trial. Even assuming that

Plaintiffs could properly call Ms. Buck at trial for this purpose, the limited (if any) relevance of Ms. Buck's understandings of Defendant's legal positions is strongly outweighed by the inconvenience to Ms. Buck in having to attend trial.  Accordingly, Defendant seeks to have Ms. Buck stricken from Plaintiffs' Final Witness List to prevent the unnecessary and undue burden of her having to divert any more of her time from her regular job duties.[2]

## III.    LIMITATION ON PLAINTIFFS' USE OF JEFF LEER

Defendant moves to limit Plaintiffs' use of Jeff Leer as a witness at trial.  This pretrial motion *in limine* is based on Plaintiffs' limited disclosures in Plaintiffs' Final Witness List.

Pursuant to the Pretrial Order, Plaintiffs' final witness list "shall disclose the testimony expected to be elicited from [each] witness at trial" and "[t]he disclosure shall be specific and not general."  Pretrial Order at ¶ 3.  Moreover, "[e]xpert witnesses shall be identified as such, and a statement of each expert's qualifications shall be appended to the witness list."  Id.  Plaintiffs' Final Witness List disclosed Jeff Leer as a witness.  Plaintiffs' Final Witness List at no. 10 (see Attachment 1 hereto).  Although Plaintiffs' noted that Dr. Leer has "expertise in Native languages," he is not designated as an expert witness.  Cf. id. at nos. 5, 11, 12, and 15.  Furthermore, unlike Plaintiffs' designated experts, Plaintiffs did not append any statement of expert qualifications for Dr. Leer.  Cf. id. at Exhs. 1-4.  Plaintiffs' only disclosures for Dr. Leer are that he will "testify regarding the distribution of Native place names and their meanings" and that "[h]e will testify regarding the fact that the Chugach spoke one language unique to them, that they gave names to

_____

[2]    Only to the extent that Ms. Buck is not excluded as a witness, Defendant counter-designates the following portions of her transcript for context: 8:3-7, 8:17 - 10:2, 11:1 - 16:25, 25:8-19, 27:23 - 29:10, 31:5 - 32:5, 33:12-19, 33:25 - 34:14, 35:14-16, 76:11 - 77:23.

features in Prince William Sound, Lower Cook Inlet, and the Gulf of Alaska, and that they were the only group to give names to features such as Middleton Island, Wessels Reef, and Seal Rocks." Id. at no. 10 (emphasis added).

Plaintiffs' disclosures substantially limit the testimony (if any) that Dr. Leer may give as a witness for Plaintiffs under the requirements of the Pretrial Order. Dr. Leer may not now testify as an expert for Plaintiffs, because Plaintiffs have failed to designate him as such. Dr. Leer may testify as a fact witness for Plaintiffs, but it is unclear from Plaintiffs' limited disclosures whether he is being offered for any proper factual purpose. Upon information and belief, Dr. Leer's understanding of "the distribution of Native place names and their meanings," Plaintiffs' Final Witness List at no. 10, is based on his interviews with other individuals. Such information is hearsay. While such hearsay could be relevant to an expert in the formulation of expert opinions, it has no place in the testimony of a fact witness. Similarly, the purported "fact that the Chugach spoke one language unique to them, that they gave names to features in Prince William Sound, Lower Cook Inlet, and the Gulf of Alaska, and that they were the only group to give names to features such as Middleton Island, Wessels Reef, and Seal Rocks," id. (emphasis added), appears also to be the proper subject only of expert opinion.

To be sure, Dr. Leer will testify at trial in an expert capacity as an adverse witness called by Defendant. Thus, Plaintiffs will likely have the opportunity on cross-examination to extract the testimony they have identified in their Final Witness List. But Plaintiffs should be required to abide by the Pretrial Order. Under the terms of the Pretrial Order, in light of Plaintiffs' limited disclosures in their Final Witness List, Plaintiffs' permissible use (if any) of Dr. Leer as a witness in their case in chief is extremely limited. Moreover, requiring Plaintiffs to question Dr. Leer (if at all) during

Defendant's case could prevent Dr. Leer from having to make separate trips from his residence in Fairbanks. As Dr. Leer is represented by at least one of Plaintiffs' counsel, however, Defendant will leave to his and Plaintiffs' counsel the decision of whether to avoid any undue burden in this manner.

## IV.     EXCLUSION OF UNDISCLOSED EVIDENCE

Defendant moves to exclude any undisclosed evidence from Plaintiffs' affirmative case. Defendant does not now know whether Plaintiffs will in fact seek to offer any evidence that has not already been properly disclosed. Indeed, given the state of Plaintiffs' disclosures to date, Defendant can not now be sure of just what evidence Plaintiffs will attempt to admit. Defendant nonetheless brings this motion *in limine* as a prophylactic to avoid surprise at trial and because any attempt to introduce undisclosed evidence would be improper and should be barred. See, e.g., Federal Rule of Civil Procedure 37(c)(1) and (d); Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1140 (9th Cir. 2006) ("Trial by surprise is no longer countenanced"); Wong v. Regents of University of California, 410 F.3d 1052, 1060, 1062 (9th Cir. 2005); Zhang v. American Gem Seafoods, Inc., 339 F.3d 1020, 1027-28 (9th Cir. 2003); Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1105-07 (9th Cir. 2001).

For example, in Plaintiffs' Final Witness List, Plaintiffs list Aron Crowell as a witness who "may testify regarding, among other subjects," and then go on to list three areas of possible testimony. Plaintiffs' Final Witness List at no. 11 (see Attachment 1 hereto). Pursuant to the Pretrial Order, Plaintiffs' final witness list "shall disclose the testimony expected to be elicited from [each] witness at trial" and "[t]he disclosure shall be specific and not general." Pretrial Order at ¶

3. Assuming Dr. Crowell does in fact testify, he should be limited to testimony consistent with only those areas actually and specifically identified in Plaintiffs' Final Witness List.

Similarly, Plaintiffs have long claimed to base some or all of their claims on oral histories, and Defendant has long voiced his concern about getting these oral histories identified.  Plaintiffs have identified some of these oral histories (through, for example, identification of specific ANCSA interviews, the provision of interview notes, the provision of a book containing oral "legends," and recounting specific stories at deposition).  To the extent that Plaintiffs have in fact specifically disclosed the oral histories they will use at trial, Defendant has no objection on this specific ground of non-disclosure although, as noted above, Defendant maintains a separate objection to the use of any oral histories as hearsay (unless they are properly corroborated).  If, however, Plaintiffs attempt to introduce at trial any oral histories that have not been properly disclosed to Defendant, that would be improper for this separate reason.  Plaintiffs have had every opportunity, through both written and oral discovery and this Court's pretrial process, to disclose the specific evidence they intend to use at trial.  See also Defendant's Motion to Compel Interrogatory Responses (contemporaneously filed herewith) (noting problems with Plaintiffs' various disclosures).  The use of any undisclosed evidence should not be allowed.

More generally, any attempt by Plaintiffs to use any evidence at trial that has not been properly disclosed pretrial would be improper.  See, e.g., Federal Rule of Civil Procedure 37(c)(1) and (d); Reno Air Racing, 452 F.3d at 1140; Wong, 410 F.3d at 1060, 1062; Zhang, 339 F.3d at 1027-28; Yeti by Molly, 259 F.3d at 1105-07.  Defendant may not be able to foresee just what issues of this type may arise at trial, but this requested order *in limine* would put Plaintiffs on notice and help ensure an orderly trial.

Counsel for Defendant has contacted counsel for Plaintiffs about these issues and Defendant's objection regarding the same. The parties were unable to resolve this matter on their own, thus necessitating this motion.

WHEREFORE, Defendant respectfully requests that this Court issue an order *in limine* that: (1) excludes as evidence any oral histories that Plaintiffs may seek to offer as proof of the truth of the matters asserted therein; (2) excludes Tracy Buck from Plaintiffs' Final Witness List; (3) limits Plaintiffs' use of Jeff Leer as a witness at trial; and (4) excludes any undisclosed evidence from Plaintiffs' affirmative case.


Dated: July 25, 2008

RONALD J. TENPAS
Assistant Attorney General

BRIAN MCLACHLAN (D.C. 472413)
U.S. Department of Justice
Environment & Natural Resources Division
c/o United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Tel: (206) 553-4148
Fax: (206) 553-4067
brian.mclachlan@usdoj.gov

BEVERLY F. LI (WSBA # 33267)
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: 202-353-9213
Facsimile: 202-305-0506
beverly.li@usdoj.gov

  s/ Joseph H. Kim
JOSEPH H. KIM (IL 6243249)
United States Department of Justice
Environment & Natural Resources Division

P.O. Box 7369
Washington, DC 20044-7369
Telephone: 202-305-0207
Facsimile: 202-305-0275
joseph.kim@usdoj.gov

DEAN K. DUNSMORE
U.S. Department of Justice
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska  99501-3657
Telephone: (907) 271-5452
Facsimile:(907) 271-5827
dean.dunsmore@usdoj.gov

Attorneys for Federal Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 25, 2008, I filed the foregoing DEFENDANT'S PRETRIAL

MOTION ON EVIDENTIARY MATTERS electronically through the CM/ECF System, which caused the

following counsel of record to be served by electronic means, as more fully reflected on the Notice

of Electronic Filing:

Goriune Dudukgian
gdudukgian@alsc-law.org

Natalie Landreth
landreth@narf.org

Richard de Bodo
rdebodo@hhlaw.com

Lynn Y. Lee
lylee@hhlaw.com

       s/ Joseph H. Kim
       Joseph H. Kim
       Counsel for Defendant