Natalie Landreth
NATIVE AMERICAN RIGHTS FUND
801 B Street, Suite 401
Anchorage, Alaska 99501
Phone: (907) 276-0680
Facsimile: (907) 276-2466
Email: landreth@narf.org

Goriune Dudukgian
ALASKA LEGAL SERVICES CORPORATION
1016 West 6th Ave., Suite 200
Anchorage, Alaska 99501
Phone: (907) 222-4524
Facsimile: (907) 279-7417

Rich de Bodo
HOGAN & HARTSON LLP
1999 Avenue of the Stars Suite 1400
Los Angeles, California 90067
Phone: (907) 310-785-4694
Facsimile: (907) 785-4601

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| EYAK *et. al*,<br><br>  Plaintiffs,<br><br>v.<br><br>CARLOS GUTIERREZ, SECRETARY OF COMMERCE<br><br>  Defendant. | Case No. A98-365-CV (HRH)<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 2 TO APPOINT DR. ARON L. CROWELL AS A COURT-APPOINTED EXPERT UNDER FEDERAL RULE OF EVIDENCE 706** |

### I.    PRELIMINARY STATEMENT

Pursuant to Federal Rule of Evidence 706, Plaintiffs respectfully request the Court

to appoint Smithsonian Institution anthropologist Aron L. Crowell Ph.D. as a court-

appointed expert on this case.[1] Dr. Crowell is a recognized and leading expert regarding the Chugach region and culture and will be invaluable to the Court in understanding the intricacies of the issues currently pending. Both parties, including their experts, have relied upon Dr. Crowell's work, and appointing him as the Court's expert will (1) assist the Court in its understanding of the issues in this case; (2) simplify and streamline the issues for trial; and (3) avoid any potential misunderstanding of Dr. Crowell's work and conclusions. In the alternative, if the Court decides not to appoint Dr. Crowell as its own expert, Plaintiffs request the Court to find that Plaintiffs may call Dr. Crowell to testify as both a fact and expert witness.

## II.   DR. CROWELL'S BACKGROUND AND QUALIFICATIONS

Dr. Crowell is currently the Director of the Arctic Studies Center at the Smithsonian Institution in Anchorage and has held this position for the past 14 years. Curriculum Vitae ("CV"), attached to the Declaration of Natalie Landreth, at 1. He holds a Ph.D. in Anthropology from the University of California, Berkeley. *Id.* In addition, he is and has been the Principal Investigator for the Kenai Fjords Oral History and Archeology Project since 2001, as well as the Principal Investigator and Project Archaeologist for the Gulf of Alaska Archaeological Survey Program since 1994. *Id. a*t 1-2. He has authored more than 15 books and articles on the Chugach region and culture, and has studied the Chugach way of life from prehistoric times to the present. *Id.* at 1-3.

Defendant's experts have cited and relied upon Dr. Crowell's work. *See* September 15, 2000 Report of Steve J. Langdon; March 14, 2007 Expert Report of Christopher Brian Wooley; Dissertation of Linda Finn Yarborough; March 13, 2008

---

[1] Because Dr. Crowell is a leading expert in areas relevant to this case and is active in community education and community programs, it is expected that he would consent to his appointment in this case.

Expert Report of Michael R. Yarborough. Both parties have included on their exhibit lists numerous publications written by or derived from Dr. Crowell. Plaintiffs' Exhibit List, Nos. 76, 80, 206, 207, 208, 220, 222, 241 and 243; Defendant's Exhibit List, pp. 12, 13, 16, and 17. Dr. Crowell is one of the most universally recognized experts on the Chugach way of life. *See, e.g.* http://www.mnh.si.edu/arctic/html/about_crowell.html. For these reasons, Plaintiffs specifically identified Dr. Crowell on their Final Witness list as someone whose knowledge and expertise is important to key issues in the case. *See* Plaintiffs' Final Witness List at 4-5.

    A.    *Possible Areas of Testimony*

The subjects Dr. Crowell could testify upon include: (1) Chugach prehistoric and historic settlement patterns (including, but not limited to, the existence and wide distribution of archaeological sites on the shores and the islands of the Gulf of Alaska); (2) resource use and use of waters by the Chugach in Prince William Sound, Lower Cook Inlet, and the Gulf of Alaska; (3) capacity and tendency of the Chugach to travel significant distances to procure food and their ability to exploit resources over a large area; and (4) trade patterns and relationships between the Chugach and the Russians in the period following initial contact, including the fact that unlike any other Native group in Alaska at the time, the Chugach were able to function as a free-trade society. Each of these subjects is crucial to the disposition of the case.

### III.    RELEVANT BACKGROUND

This Court should appoint Dr. Crowell as a court-appointed expert under FRE 706 because the Government is asserting that it can prevent Dr. Crowell from serving as an expert or fact witness for the Plaintiffs in this case. Despite the reliance on Dr. Crowell's

work, by Defendants and their experts, the Government has adamantly refused to allow Dr. Crowell's participation. *See* Declaration of Natalie Landreth ("Landreth Decl.") ¶ 3-8. Assistant United States Attorney Susan Lindquist may have instructed Dr. Crowell to disregard a deposition subpoena previously served on him on April 18, 2008. Landreth Decl. ¶ 3-4. Ms. Lindquist recently indicated that she would refuse to allow Plaintiffs to call Dr. Crowell to testify at trial, whether designated as an expert or not, and asserted that there was not "a snowball's chance in hell" that she would allow Dr. Crowell to testify in this case. *Id.* ¶ 8. Given these statements and others by this government attorney, it appears that the government will not permit Dr. Crowell to provide his witness account or opinions in this case. Plaintiffs nonetheless believe his opinions are extremely relevant and will be helpful to this Court, and in order to seek a resolution that is efficient and impartial to appoint Dr. Crowell as the Court's expert.

The only legal basis Ms. Lindquist offered for Defendant's obstruction of Dr. Crowell's testimony—despite the fact that Defendant and its experts are relying upon and citing to Dr. Crowell's research -- is that, according to Ms. Lindquist, federal regulations (so-called *Touhy* Regulations), derived from 5 U.S.C. § 301, purportedly provided Ms. Lindquist the discretion to prevent Dr. Crowell from testifying against the government. Landreth Decl. ¶ 7. For the reasons discussed below, Defendant and its attorney are mistaken.

### IV. THE SMITHSONIAN INSTITUTION IS NOT A GOVERNMENT AGENCY SUBJECT TO THE FEDERAL REGULATIONS GOVERNING ORAL TESTIMONY

Dr. Crowell can and should be allowed to testify and act as an expert in this case, even though this is a suit against the federal government. In opposition to Dr. Crowell's testimony, Defendant cites possible restrictions by the so-called "*Touhy* regulations," named after the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). *Touhy* regulations give power to "executive departments" via 5 U.S.C. § 301, also known as the federal "housekeeping" statute, to regulate the production of official files, documents, records, and information, and the appearance of agency employees as witnesses in connection with legal proceedings in which the agency is not a party. These regulations are created by each agency as part of their self governance. For example, the U.S. Treasury expressly states that "[t]he purpose of these regulations is to conserve valuable agency resources, to protect Treasury employees from becoming enmeshed in litigation, and to protect sensitive government documents and decision making processes." Federal Register, *Rules and Regulations* (2004), *available at* http://edocket.access.gpo.gov/2004/04-20219.htm.

However, Defendant has not cited a single Touhy regulation that might limit the ability for a Smithsonian expert to testify. In fact, there is no evidence that such regulations exist. On its face, 5 U.S.C. § 301, which by its own definition applies only to "executive departments," does not even apply to the Smithsonian. The statute specifies exactly which federal agencies it applies, to and the Smithsonian is not listed.[2] This is hardly surprising, given that the Smithsonian "has no governmental function and was created by Congress to be separate from the three branches of government." U.S. National Commission on Libraries and Information Science (NCLIS), *Survey of Selected*

---

[2] Federal laws that affect the dissemination of information from government entities, such as the Freedom of Information Act, also exclude the Smithsonian. *See Dong v. Smithsonian Institution*, 125 F.3d 877 (D.C. Cir. 1998), *cert. denied*, 524 U.S. 922 (1998).

*Federal Agency Policies, Programs and Practices Relating to Public Information Dissemination* (2000) ("NCLIS Survey"), *available at* http://www.nclis.gov/govt/assess/assess.appen27.pdf.

Further, the Smithsonian's own mission and record strongly indicate that its experts should be allowed to testify in cases like this. First, the Smithsonian "has no published policies on government information dissemination." *See id*. Second, experts from the Smithsonian have previously been involved in litigation against the federal government with no apparent restrictions on their involvement. *See, e.g., VanZandt v. Fish and Wildlife Service*, 524 F. Supp. 2d 239, 250 (W.D.N.Y 2007); *Bonnichsen v. United States*, 217 F. Supp. 2d 1116 (D. Or. 2002). In both of these cases the Smithsonian experts acted in the same capacity that an ordinary private expert would. Third, preventing a Smithsonian expert from testifying would fly in the face of the Smithsonian's mandate for the "increase and diffusion of knowledge." *See* NCLIS Survey. By contrast, applying their expertise to clarifying facts at a trial fits directly within the Smithsonian's mission to acquire and spread knowledge.

In sum, the Smithsonian and its employees are not subject to the type of regulations that the government has cited for attempting to restrict Dr. Crowell's testimony.

## V. THE COURT SHOULD APPOINT DR. CROWELL AS ITS EXPERT

Although Plaintiffs strongly believe they are within their rights to name Dr. Crowell as their own expert, in the interest of avoiding unnecessary conflict and the attendant expense and delay, Plaintiffs request that the Court appoint Dr. Crowell as its

own expert pursuant to Federal Rule of Evidence 706. "The inherent power of a trial judge to appoint an expert of his own choosing is virtually unquestioned." *Scott v. Spanjer Bros. Inc.*, 298 F.2d 928 (2d Cir. 1962); *Danville Tobacco Associates v. Bryant-Buckner Associates Inc.*, 333 F.2d 202 (4th Cir. 1964); *Sink, The Unused Power of a Federal Judge to Call His Own Expert Witnesses*, 29 S. Cal.L.Rev. 195 (1956); 2 Wigmore §563, 9 id. §2484; Annot., 95 A.L.R.2d 383; *see* Christopher B. Mueller & Laird C. Kirkpatrick, 3 Federal Evidence §367 (2d ed. 1994) (footnote omitted) ("Commentators and decisional authority generally agree that courts have inherent authority to appoint expert witnesses and Fed.R.E. 706 codifies this authority, prescribing in some detail the procedure to be followed and limits to be observed.").[3]

While Rule 706 does not specify a standard for determining when to appoint an expert, guidance may be found in the policy goal underlying the rule, which is to promote accurate fact-finding. *Walker v. American Home Shield Long Term Disability Plan,* 180

---

[3] Federal Rule of Evidence 706 reads as follows:

(a) Appointment.

The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless the witness consents to act. A witness so appointed shall be informed of the witness' duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of the witness' findings, if any; the witness' deposition may be taken by any party; and the witness may be called to testify by the court or any party. The witness shall be subject to cross-examination by each party, including a party calling the witness.

…

(d) Parties' experts of own selection.

Nothing in this rule limits the parties in calling expert witnesses of their own selection.

F.3d 1065, 1071 (9th Cir. 1999); *Students of Cal. School For the Blind v. Honig,* 736 F.2d 538, 549 (9th Cir. 1984), *vacated on other grounds,* 471 U.S. 148 (1985). The most important factor in favor of appointing an expert is that the case involves a complex or esoteric subject beyond the trier of fact's ability to adequately understand without expert assistance. *Id.*

Here, there is little question that the settlement, migration, hunting, fishing, and trade habits and histories of the Chugach people comprise a complex and esoteric subject, and that the Court could benefit from receiving expert testimony from Dr. Crowell. As a leading expert in this specialized field of study, Dr. Crowell will provide uniquely valuable knowledge and insight into the central and highly fact-intensive issues before the court—including the Chugach's fishing and hunting patterns, their traditional resource use, their traditional use of the waters in their region, and other related subjects. Given that both parties and their experts have already relied upon Dr. Crowell's work in preparing for trial, his appointment would clearly aid fair and accurate fact-finding, and would not impede the ability of both parties to call their own experts. Fed. R. Evid. 706(d).

If the Court appoints Dr. Crowell as its expert, Plaintiffs further propose, in the interest of preserving his impartiality, that (1) all parties be precluded from engaging in any *ex parte* communications with Dr. Crowell; (2) that he only be called upon to provide testimony on specific factual issues to be determined by the parties and the Court; and (3) that the cost of his time be divided between the two parties. Plaintiffs also request that if either or both parties desire to depose Dr. Crowell or cross-examine him during trial, they be allowed to do so.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court appoint Smithsonian Institution anthropologist Aron L. Crowell Ph.D. as a Court-appointed expert, or, alternatively, an order ruling that Plaintiffs may call Dr. Crowell to testify as both a fact and expert witness.

DATED this 25th day of July 2008.

> s/nlandreth
>
> Natalie A. Landreth (Bar no. 0405020)
> NATIVE AMERICAN RIGHTS FUND
> 801 B Street, Suite 401
> Phone: (907) 276-0680
> Facsimile: (907) 276-2466
> Email: landreth@narf.org

**CERTIFICATE OF SERVICE**

I, Natalie Landreth, certify that a true and correct copy of **PLAINTIFFS' MOTION IN LIMINE NO. 2 TO APPOINT DR. ARON L. CROWELL AS A COURT-APPOINTED EXPERT UNDER FEDERAL RULE OF EVIDENCE 706** was served on July 25, 2008 pursuant to the Court's electronic filing procedures upon the following:

Dean Dunsmore (dean.dunsmore@usdoj.gov)

lorraine.carter@usdoj.gov

Beverly F. Li (beverly.li@usdoj.gov)

efile_nrs.enrd@usdoj.gov

Brian McLachlan (brian.mclachlan@usdoj.gov)

                                            s/nlandreth