RONALD J. TENPAS
Assistant Attorney General

BRIAN A. MCLACHLAN
U.S. Department of Justice
Environment & Natural Resources Division
c/o United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Tel: (206) 553-4148
Fax: (206) 553-4067
brian.mclachlan@usdoj.gov

Attorney for Federal Defendants
(Additional Counsel Listed in Signature Block)


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA


| | | |
|---|---|---|
| NATIVE VILLAGE OF EYAK, | ) | |
| NATIVE VILLAGE OF TATITLEK, | ) | Case No. A98-365-CV (HRH) |
| NATIVE VILLAGE OF CHENEGA, | ) | |
| (aka CHENEGA BAY), NATIVE | ) | |
| VILLAGE OF NANWALEK, NATIVE | ) | |
| VILLAGE OF PORT GRAHAM, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARLOS GUTIERREZ, Secretary | ) | |
| of Commerce, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |


**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION IN LIMINE NO. 1 TO
EXCLUDE EXPERT TESTIMONY OF MICHAEL R. YARBOROUGH**

## TABLE OF CONTENTS

PAGE

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    LEGAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.     Mr. Yarborough is Qualified by His Knowledge, Education, and Experience
               to Provide Testimony Regarding the Culture and Lifeways of the Prehistoric
               and Historic Inhabitants of Prince William Sound and the Lower Kenai
               Peninsula . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       B.     Mr. Yarborough's Reports and Opinions are Reliable . . . . . . . . . . . . . . . . . . . . 8

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

FEDERAL CASES                                                           PAGE

Castro v. Oklahoma, 71 F.3d 1502 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cummins v. Lyle Industries, 93 F.3d 362 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) . . . . . . . . . . . . . . . . . . . 2, 3

Diaz v. Johnson Matthey, Inc., 893 F. Supp. 358 (D.N.J. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 10

Doe v. Ortho-Clinical Diagnostics, Inc., 440 F. Supp. 2d 465 (M.D.N.C. 2006) . . . . . . . . . . . . 9

Elsayed Mukhtar v. California State Univ., 299 F.3d 1053 (9th Cir. 2002) . . . . . . . . . . . . . . . . 3

Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998 (9th Cir. 2004) . . . . . . . . . . . . 3

In Re Paoli R.R. Yard PCB Litig., 35 F.3d 7171 (3rd Cir, 1994) . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Silicone Gel Breasts Implants Prods. Liability Litig., 318 F. Supp. 2d 879
 (C.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3

Mancuso v. Consolidated Edison Co. of N.Y., 967 F. Supp. 1437 (S.D.N.Y. 1997) . . . . . . . . . 10

Smith v. Rasmussen, 57 F. Supp. 2d 736 (N.D. Iowa 1999), rev'd on other grounds, 249
 F.3d 755 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Hankey, 203 F.3d 1160 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States v. Paul, 175 F.3d 906 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Sandoval-Mendoza, 472 F.3d 645 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . 3

Wade-Greaux v. Whitehall Labs., Inc., 874 F. Supp. 1441 (D.V.I. 1994) . . . . . . . . . . . . . . . . . 10

Weigram v. Marley Co., 169 F.3d 514 (8th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## TABLE OF EXHIBITS

EXHIBIT            DOCUMENT

1                  Resume of Michael R. Yarborough.

2                  Deposition of Michael R. Yarborough, dated May 23, 2008.

3                  Prehistoric Maritime Adaptations of Prince William Sound and the Pacific
                   Coast of the Kenai Peninsula, Michael R. Yarborough and Linda F.
                   Yarborough, ARCTIC ANTHROPOLOGY Vol. 35, pp. 132-145, 1998.

4                  Comments on Anthropological Source Documents, Patricia Partnow,
                   Ph.D., revised June 5, 2008.

5                  Traditional Aboriginal Use of the Outer Continental Shelf from Kayak
                   Island to Lower Cook Inlet, Michael R. Yarborough, November 20, 1995.

6                  Declaration of Michael R. Yarborough, July 9, 2001.

7                  Second Declaration of Michael R. Yarborough.

8                  Expert Report of Michael R. Yarborough, March 13, 2008.

9                  Supplemental Expert Report of Michael R. Yarborough, May 14, 2008.

Pursuant to the Court's Order for Pretrial Proceedings and Final Pretrial Conference

(Dkt. 123) ("Pretrial Order"), Defendant, Carlos Gutierrez, Secretary of Commerce, hereby

submits this Response to Plaintiffs' Motion in Limine No. 1 to Exclude Expert Testimony of

Michael R. Yarborough.

## I.    INTRODUCTION

Plaintiffs seek to exclude the testimony of Defendant's expert Michael Yarborough,

alleging that he is "unqualified" and that his opinions are "unreliable."  Pls.' Mot. in Limine

("Mot.") at 4, 6.  Plaintiffs' argument is without merit and should be summarily rejected by this

Court.

Mr. Yarborough has a Masters degree in anthropology and has over 30 years of

experience working in Alaska.  Moreover, directly related to the relevant issues in this case, he

has led or participated in numerous archeological studies of the Prince William Sound and

Lower Cook Inlet area, including a study for the Chugach National Forest that evaluated a major

archeological excavation at Uqciuvit, a site in northwestern Prince William Sound near the end

of Esther Passage.  In addition, he also co-authored a peer reviewed article published in the

journal ARCTIC ANTHROPOLOGY discussing the culture and lifeways (e.g., subsistence practices

and socio-political organization) of the prehistoric and early historic inhabitants of Prince

William Sound.  This experience more than qualifies him to offer his opinions in this case.

Plaintiffs contend that Mr. Yarborough's opinions are unreliable because they are

allegedly based on "nothing more" than his reading of the relevant anthropological and historical

literature.  Mot. at 6.  However, as Mr. Yarborough's reports and deposition transcript

demonstrate, he brought his extensive experience in Alaska, and specific experience in the case

1

area, to his work on this matter.  Mr. Yarborough then supplemented this knowledge and

experience with an extensive literature review, which included both primary and secondary

sources such as historical accounts from Russian and European explorers, archeological studies,

and ethnographic works.  Indeed, Plaintiffs' allegations of unreliability are flatly contradicted by

their own expert, Dr. Patricia Partnow, who, after reviewing Mr. Yarborough's report for this

case, concluded that it "follows the standards of sound scholarly research."

Finally, Plaintiffs' argument to exclude Mr. Yarborough is based on a faulty premise –

that an archeologist with extensive experience in the region at issue is somehow unqualified to

render opinions about the culture and lifeways (such as subsistence practices and socio-political

organization) of the people he has studied.  Plaintiffs essentially argue that archeologists are only

qualified to consider archeological remains (i.e., physical artifacts), and are not qualified to

consider relevant historical and ethnographic data in studying and reporting on past cultures and

lifeways.  This is a myopic and faulty view of the field of archeology, and Plaintiffs' brief is void

of any support from the scientific or academic world to support it.

## II.    LEGAL BACKGROUND

Federal Rule of Evidence 702 governs the admissibility of expert testimony.[1]   Under

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Kumho Tire Co. v.

Carmichael, 526 U.S. 137 (1999), "only relevant and reliable expert opinion testimony is

_____

[1] Fed. R. Evid. 702 provides: "If scientific, technical, or other specialized knowledge will assist
the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as
an expert by knowledge, skill, experience, training, or education, may testify thereto in the form
of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the
testimony is the product of reliable principles and methods, and (3) the witness has applied the
principles and methods reliably to the facts of the case."

admissible.  Expert opinion testimony is relevant if the knowledge underlying it has a 'valid ...

connection to the pertinent inquiry.' And it is reliable if the knowledge underlying it 'has a

reliable basis in the knowledge and experience of [the relevant] discipline.' " United States v.

Sandoval-Mendoza, 472 F.3d 645, 654 (9th Cir. 2006) (footnotes omitted) (alternations in

original).

     A trial court has broad latitude in determining whether an expert's testimony is reliable

and in deciding how to determine the testimony's reliability.  Elsayed Mukhtar v. California

State Univ., 299 F.3d 1053, 1064 (9th Cir. 2002); see also Hangarter v. Provident Life &

Accident Ins. Co., 373 F.3d 998, 1017 (9th Cir. 2004) ("[F]ar from requiring trial judges to

mechanically apply the Daubert factors ... Kumho Tire heavily emphasizes that judges are

entitled to broad discretion when discharging their gatekeeping function.") (quoting United

States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000)).

     Daubert provides the following non-exclusive list of factors to guide the assessment of

the reliability of scientific evidence: (1) whether a scientific theory or technique can be (and has

been) tested; (2) whether the theory or technique has been subjected to peer review and

publication; (3) the known or potential rate of error and the existence and maintenance of

standards controlling the technique's operation; and (4) whether the technique is generally

accepted.  Daubert, 509 U.S. at 593-94; see Kumho Tire, 526 U.S. at 151 ("[Daubert] made clear

that its list of factors was meant to be helpful, not definitive. Indeed, those factors do not all

necessarily apply even in every instance in which the reliability of scientific testimony is

challenged.").  In evaluating the reliability of evidence, the goal is to make certain that an expert

... employs in the courtroom the same level of intellectual rigor that characterizes the practice of

an expert in the relevant field.  <u>Kumho Tire</u>, 526 U.S. at 152.

## III.    ARGUMENT

> **A.    Mr. Yarborough is Qualified by His Knowledge, Education, and Experience to Provide Testimony Regarding the Culture and Lifeways of the Prehistoric and Historic Inhabitants of Prince William Sound and the Lower Kenai Peninsula.**

Plaintiffs contend Mr. Yarborough is unqualified to offer opinions concerning the culture and lifeways of the prehistoric and historic inhabitants of Prince William Sound and the Lower Kenai Peninsula.  Mot. at 2-3.  Mr. Yarborough's qualifications belie this contention.

Mr. Yarborough earned both a Bachelors (University of Arkansas, 1972) and Masters (University of Toronto, 1973) degree in anthropology.  Ex. 1 (resume of Michael Roy Yarborough); Ex. 2 (May 23, 2008 deposition of Michael R. Yarborough) at 3-4.  He is a member of the Alaska Anthropological Association, Society for Canadian Archeology, Society for Historic Archeology, and the Society for American Archeology.  <u>Id.</u>  He has worked in Alaska for over 30 years on various archeological projects, <u>see</u> Ex. 1, and meets the United States Department of the Interior standards as both a prehistoric archeologist and historic archeologist, <u>see</u> Ex. 2 at 17.[2/]

Plaintiffs' argument is especially undermined by the fact that Mr. Yarborough has extensive experience specific to the areas at issue in this case.   For example, in 1988 he worked for the National Forest Service to evaluate the Uqciuvit site in northwest Prince William Sound.  Ex. 2 at 7.  As Mr. Yarborough pointed out in his deposition, at the time, the Uqciuvit excavation was only the second major archeological excavation in Prince William Sound, and the project

---

[2/] The principal difference between prehistoric archeology and historic archeology is that historic archeology concerns periods when written records exist.  <u>See</u> Ex. 2 at 16.

resulted in a reevaluation of the prehistoric cultural sequence of the area and gave researchers a

broader picture of the subsistence patterns of Prince William Sound as a whole.  Ex. 2 at 9, 12.

Mr. Yarborough also participated in assessments conducted as a result of the Exxon

Valdez oil spill, and has conducted several other archeological surveys in Prince William Sound

and the Lower Kenai Peninsula.   Ex. 2 at 8.   In addition, Mr. Yarborough co-authored an article

appearing in the peer reviewed journal ARCTIC ANTHROPOLOGY, which specifically concerned

the maritime adaptations of the prehistoric and historic inhabitants of Prince William Sound and

the Lower Kenai Peninsula.  Ex. 3 (Prehistoric Maritime Adaptations of Prince William Sound

and the Pacific Coast of the Kenai Peninsula).  The article discussed, among other things, the

interaction between people and their subsistence base, and the relationship between maritime

resources and cultural change – issues highly relevant to this case and Mr. Yarborough's expert

reports.  See id. at 4.  As Mr. Yarborough pointed out in his deposition, these projects

contributed to his understanding of the prehistoric past of the general area and informed the

opinions and conclusions contained in his expert reports.  Ex. 2 at 7-9, 13.

Notwithstanding this highly relevant experience, Plaintiffs argue that because Mr.

Yarborough does not hold himself out as an expert in cultural anthropology, physical

anthropology, or linguistics, he is unqualified to offer opinions on the prehistoric and historic

culture and lifeways of the inhabitants of Prince William Sound and the Lower Kenai Peninsula.

See Mot. at 2.  First, Plaintiffs take an unsupported and myopic view of the field of archeology.

Apparently, Plaintiffs view archeologists as only qualified to examine archeological remains

(i.e., physical artifacts), when, as Mr. Yarborough pointed out in his deposition, in practice,

archeologists take into consideration a wide range of sources (including historic and

ethnographic information) in arriving at their conclusions concerning past cultures.[3]  See Ex. 2 at 6-7.

Second, Plaintiffs suggest that only a historian or cultural anthropologist would be qualified to opine on the past culture and lifeways of the prehistoric and historic inhabitants of the case area.  See Mot. at 5.  Not only is Plaintiffs' brief utterly void of any support from the academic or scientific world to support this narrow view of the field of archeology, their argument is also legally flawed.  A court may not exclude expert testimony solely on the ground that the witness's qualifications are not sufficiently specific if the witness is generally qualified. In re Silicone Gel Breasts Implants Prods. Liability Litig., 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004), (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717 (3d Cir. 1994)) (abuse of discretion for trial court to preclude trained internist with broad experience in field of toxic substances, who had spent significant time reading literature on the effects of PCBs on human body, from testifying as to whether PCBs caused illness in plaintiffs, even though witness lacked expertise in other, more relevant, specialized, fields).  As discussed above, Mr. Yarborough's training in anthropology, his specific experience working in the case area, and his extensive review of the relevant historical, archeological, and ethnographic literature, more than qualify him to opine on the culture and lifeways (including subsistence practices, socio-political structure, and cultural boundaries) of the prehistoric and historic inhabitants of Prince William Sound and the Lower

---

[3] Mr. Yarborough explained that professionals in his field consider information from sources such as radiocarbon dating, soil science, biology, climatology, tectonics, historic resources, ethnographic information, architecture, and human osteology.  Ex. 2 at 6.  Mr. Yarborough also explained that the types of information (e.g., archeological, historical, ethnographical) considered in his expert reports are the same types of information he has utilized in his work throughout his professional career.  Id. at 56-57.

Kenai Peninsula.[4]

Plaintiffs assert that Mr. Yarborough "conceded at his deposition [that] it is impossible for an archeologist to reach any meaningful conclusions about the main issues in this case, i.e., whether the Chugach hunted and fished on Outer Continental Shelf waters during prehistoric times." Mot. at 3. A review of Mr. Yarborough's deposition transcript reveals that Plaintiffs take Mr. Yarborough's testimony out of context and that he said no such thing. Rather, Mr. Yarborough testified that: (a) there was no archeological evidence (i.e., physical artifacts) showing that the prehistoric inhabitants of the case areas used the waters of the Exclusive Economic Zone ("EEZ"); (b) it was possible to demonstrate from the archeological evidence that the prehistoric inhabitants of the case area would not have needed to use the waters of the EEZ to harvest the resources they utilized; and (c) that archeological evidence did not prove or disprove use of the waters of the EEZ. Ex. 2 at 30.

The transcript is clear that Mr. Yarborough was addressing the conclusions that can be

---

[4] Plaintiffs' case citations do not help their argument and are readily distinguishable. In Weigram v. Marley Co., 169 F.3d 514, 518-19 (8th Cir. 1999), the court found a fire captain's testimony concerning a heater malfunction inadmissible because the witness was not an electrical expert and admitted that he did not know what happened with the heater. In contrast, here Mr. Yarborough's proposed testimony concerns areas in which he has considerable knowledge and experience. In Cummins v. Lyle Industries, 93 F.3d 362 (7th Cir. 1996), the witness sought to testify concerning the feasibility of an alternate design for a trim press and the inadequacy of the warnings and instruction manual for the press. The Seventh Circuit upheld the district court's exclusion of the testimony not because of the witness's qualifications, but because the witness's testimony was predicated on his own, untested observations, which could not be reliably evaluated without testing. Id. at 367-69. That is not the case here. Finally, Plaintiffs cite Castro v. Oklahoma, 71 F.3d 1502 (10th Cir. 1995); however, this case did not concern Federal Rule of Evidence 702. Rather Castro was a due process appeal of a death penalty sentence, and is thus of no relevance.

drawn from the <u>archeological evidence</u> (i.e., the physical artifacts) alone, and that he was not, as Plaintiffs erroneously claim, speaking to what conclusions an <u>archeologist</u> could reach by considering the archeological evidence in combination with other sources, such as historical accounts and ethnographic studies.  This is a point Mr. Yarborough addressed in other sections of his deposition.  <u>See</u> <u>e.g.</u>, <u>id.</u> at 31-33.

      **B.**      **Mr. Yarborough's Reports and Opinions are Reliable**

      Plaintiffs contend that Mr. Yarborough's opinions are unreliable because they are allegedly based on "nothing more" than his reading of the relevant anthropological and historical literature.  Mot. at 6.  This contention goes not to Mr. Yarborough's methods so much as to his qualifications.  Moreover, as detailed above, Mr. Yarborough brought his extensive experience in Alaska, and specific experience in the case area, to his work on this matter and supplemented this knowledge and experience with an extensive literature review.

      In this regard, Plaintiffs argument is ironic because Plaintiffs' own expert, Mr. Ganley, reviewed and based his opinions on many of the same sources as Mr. Yarborough.  Moreover, Plaintiffs' allegations of unreliability are flatly contradicted by their own expert, Dr. Patricia Partnow.  After reviewing Mr. Yarborough's report for this case, Dr. Partnow concluded that it "<u>follows the standards of sound scholarly research</u>."  Ex. 4 (Expert Report of Dr. Patricia Partnow) (emphasis added) at 6.

      Here again, Plaintiffs' citations to case law miss the mark.  In <u>Smith v. Rasmussen</u>, 57 F. Supp. 2d 736, 766 (N.D. Iowa 1999), <u>rev'd on other grounds</u>, 249 F.3d 755, 758-59 (8th Cir. 2001), the court excluded testimony because the witness practiced general psychiatry and "his only real contact with the field of diagnosis and treatment of gender identify disorder" was

through a literature review.  Id. at 766.  The court also found troubling that the expert based his belief that certain articles on gender identity disorder were reliable on a medical librarian's statement that articles on Medline were generally reliable.  Id.  Here, in stark contrast, Mr. Yarborough's literature review supplemented his already extensive experience in the case area.

Similarly, in United States v. Paul, 175 F.3d 906, 912 (11th Cir. 1999), the court found that a literature review did not qualify a law professor to offer expert testimony in handwriting analysis where he had no formal training in the field, had attended no seminars on the subject, and did not belong to any professional organizations in the field.  As discussed above, Mr. Yarborough has a Masters degree in anthropology, has 30 years of professional archeological experience in Alaska, is a member of numerous professional organizations, and has experience specifically relating to the culture and lifeways of the prehistoric and historic inhabitants of Prince William Sound and the Lower Kenai Peninsula.

Finally, in Doe v. Ortho-Clinical Diagnostics, Inc., 440 F. Supp. 2d 465, 470 (M.D.N.C. 2006), the expert testimony at issue was not excluded because it was based on a literature review.  In fact, the court noted that a literature review can be an appropriate part of the method an expert utilizes to form an opinion.  Id. at 472.  Rather the expert testimony was excluded because the specific literature review method employed failed to meet necessary standards of reliability because of the disparate and unconnected studies relied upon, and the fact that the expert's conclusions were not supported by the literature presented to the court.  Id. at 473-74. Here again, as illustrated by Mr. Yarborough's reports, he supports his conclusions with citations to appropriate historical, archeological, and ethnographic sources.  See Ex 5 (Traditional Aboriginal Use of the Outer Continental Shelf from Kayak Island to Lower Cook Inlet); Ex. 6

9

(Declaration of Michael Yarborough); Ex. 7 (Second Declaration of Michael Yarborough); Ex. 8

(Expert Report of Michael R. Yarborough); Ex. 9 (Supplemental Expert Report of Michael R.

Yarborough).[5]

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion in Limine No. 1 to

Exclude Expert Testimony of Michael R. Yarborough.

RESPECTFULLY SUBMITTED this 5th day of August, 2008.

RONALD J. TENPAS
Assistant Attorney General

  /s/ Brian McLachlan
BRIAN MCLACHLAN (D.C.
472413)
U.S. Department of Justice
Environment & Natural Resources
Division
c/o United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Tel: (206) 553-4148
Fax: (206) 553-4067

---

[5] Plaintiffs' additional case law citations are inapposite.  See Mancuso v. Consolidated Edison
Co. of N.Y., 967 F. Supp. 1437, 1453 (S.D.N.Y. 1997) (concluding testimony unreliable where
witness did not have requisite knowledge or experience in PCB toxicology and failed to follow
conventional toxicological methodology in making determination that PCBs caused plaintiffs'
ailments); Diaz v. Johnson Matthey, Inc., 893 F. Supp. 358, 372-76 (D.N.J. 1995) (although
noting "[e]xclusion is improper simply because an expert does not have the most appropriate
degree or training," court excluded testimony where doctor had never treated a patient with
platinum allergy, had only casually studied literature on platinum allergy, and had employed
faulty causation methodology); Wade-Greaux v. Whitehall Labs., Inc., 874 F. Supp. 1441, 1476
(D.V.I. 1994) (witness excluded because knowledge of relevant field came solely from literature
review for purposes of litigation).

brian.mclachlan@usdoj.gov

BEVERLY F. LI (WSBA # 33267)
U.S. Department of Justice
Environment & Natural Resources
Division
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: 202-353-9213
Facsimile: 202-305-0506
beverly.li@usdoj.gov

JOSEPH H. KIM (IL 6243249)
United States Department of Justice
Environment & Natural Resources
Division
P.O. Box 7369
Washington, DC 20044-7369
Telephone: 202-305-0207
Facsimile: 202-305-0275
joseph.kim@usdoj.gov

DEAN K. DUNSMORE
U.S. Department of Justice
Environment & Natural Resources
Division
801 B Street, Suite 504
Anchorage, AK 99501-3657
Telephone: (907) 271-5452
Facsimile:(907) 271-5827
dean.dunsmore@usdoj.gov

Attorneys for Federal Defendants

11

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 5, 2008, I caused the foregoing to be served on the following counsel of record via the Court's ECF system as more fully reflected on the Notice of Electronic Filing:

Goriune Dudukgian
gdudukgian@alsc-law.org

Natalie Landreth
landreth@narf.org

Richard de Bodo
rdebodo@hhlaw.com

/s/ Brian McLachlan
Brian McLachlan
Counsel for Defendant