Natalie Landreth
NATIVE AMERICAN RIGHTS FUND
801 B Street, Suite 401
Anchorage, Alaska 99501
Phone: (907) 276-0680
Facsimile: (907) 276-2466
Email: landreth@narf.org

Goriune Dudukgian
ALASKA LEGAL SERVICES CORPORATION
1016 West 6th Ave., Suite 200
Anchorage, Alaska 99501
Phone: (907) 222-4524
Facsimile: (907) 279-7417

Rich de Bodo
HOGAN & HARTSON LLP
1999 Avenue of the Stars Suite 1400
Los Angeles, California 90067
Phone: (310)785-4888
Facsimile: (310) 785-4601

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| NATIVE VILLAGE OF EYAK *et. al,*<br><br>Plaintiffs,<br><br>v.<br><br>CARLOS GUTIERREZ, SECRETARY OF COMMERCE<br><br>Defendant. | Case No. A98-365-CV (HRH)<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' PRETRIAL MOTION ON EVIDENTIARY MATTERS** |

## I. PRELIMINARY STATEMENT

From beginning to end, Defendant's multi-part pretrial motion on evidentiary matters is staggeringly misguided. While the targets of its motion vary in nature, there is a consistent—and fatal—character to each of its requests: an improper attempt to exclude an extremely broad area of evidence, sight unseen, rather than have the Court consider each evidentiary issue on a case-

by-case basis. As the Court is well aware, determinations of aboriginal rights are intensely fact-driven inquiries that typically involve the presentation of a wide range of evidence, including (but not limited to) testimony of expert witnesses in ethnology and anthropology, contemporary historical accounts, and oral testimony by members of the tribe or group bringing the claim. *See Confed. Tribes of the Warm Springs Reservation of Oregon v. United States*, 177 Ct. Cl. 184, 1966 WL 8893, *12-14 (1966). Each piece of evidence must accordingly be examined *in context* in order to evaluate both its admissibility and, if admitted, its weight.

Plainly, a sweeping preclusion of a generalized class of evidence, without even knowing what that evidence encompasses or what part it plays in Plaintiffs' case, would only hinder, not aid, the Court in reaching a complete and accurate factfinding. Further, it bears emphasizing that this case does not implicate the concerns most commonly raised and addressed by evidentiary motions in jury trials. The Court has no reason to fear it will be prejudiced or otherwise misled by the evidence Defendant seeks to exclude, and may therefore consider each evidentiary issue as it arises at trial.

For these reasons, Defendant's motion should be denied in its entirety.

## II.  EXCLUSION OF ORAL HISTORIES AS SUBSTANTIVE PROOF

Incredibly, Defendant requests that the Court exclude "any oral histories that Plaintiffs may seek to offer as proof of the truth of the matter asserted therein" on the grounds that that such histories are "hearsay and thus inadmissible unless properly corroborated." (Defendant's Motion at 2). Not only does Defendant seek to eliminate an entire *category* of evidence, bypassing all consideration of specific items on an individual basis; it completely disregards two centuries of case law establishing that such evidence is to be admitted and accorded weight in cases involving claims of aboriginal rights. Plaintiffs should be permitted to rely freely on the

oral testimony of its fact witnesses to make their case.  At a minimum, the admissibility of the evidence at issue should be decided on a case-by-case basis at trial, not subjected to an across-the-board preclusion.

> A. Courts and Tribunals Have Consistently Held that Oral Histories Constitute Admissible Evidence of Aboriginal Rights.

In case after case, the Indian Claims Commission and the federal courts have acknowledged "the difficulty of obtaining the essential proof necessary" to establish rights that date back to ancient, even prehistoric times, and the necessity of "a liberal approach…in weighing the limited evidence" that is typically available. *Nooksack Tribe of Indians v. United States*, 3 Ind. Cl. Comm. 492, 499 (1955); *cf. United States v. State of Washington*, 459 F. Supp. 1020, 1059 (W.D. Wash. 1978), *aff'd,* 730 F.2d 1314, 1317 (9th Cir. 1984) ("In determining usual and accustomed fishing places [during treaty times] the court cannot follow stringent proof standards because to do so would likely preclude a finding of any such fishing areas.").  Such evidence includes, though it is not limited to, oral testimony of individuals descended from natives "who had actual knowledge of the extent of the use and occupancy of the land claimed…which knowledge had been passed on by word of mouth." *Confed. Tribes of the Warm Springs Reservation of Oregon v. United States*, 177 Ct. Cl. 184, 1966 WL 8893, *12 (1966); *see also Pueblo de Zia v. United States*, 165 Ct. Cl. 501, 1964 WL 8577, *2 (1964); *cf. Washington*, 459 F. Supp. at 1059 (accepting testimony of tribal elders as evidence of "usual and accustomed fishing places").  Defendant has not cited any aboriginal rights cases in which this type of testimony has been excluded as hearsay, nor are Plaintiffs aware of any.[1]

---

[1] Even in *Coos Bay v. United States*, 87 Ct. Cl. 14, 1938 WL 4076 (1938), cited by Defendant, the court did not exclude oral testimony on the ground that it constituted hearsay; rather, it declined to find that the oral testimony of the Indian witnesses was sufficient "to overcome contemporaneous documentary and historical evidence to the contrary." *Coos Bay*, 1938 WL 4076 at *7. *Hatmaker v. Georgia Dept. of*

Defendant's only answer to the long line of precedent supporting the admission of oral testimony as evidence of aboriginal title is an assertion, without applicable authority, that such testimony is "inherently unreliable" and must be corroborated by "contemporaneous documentation or historical evidence." This argument, however, fails at the outset, as it is premised on a willful misreading of the very law Defendant itself cites. The principal case Defendant offers to attack the reliability of oral histories, *Bonnichsen v. United States*, 367 F.3d 864 (9th Cir. 2004), and 217 F. Supp. 2d 1116 (D. Or. 2002), did not involve aboriginal title but rather a challenge by scientists to an agency decision awarding remains of a 9,000-year-old skeleton to a coalition of Indian tribes under the Native American Graves Protection and Repatriation Act (NAGPRA), and is therefore completely inapposite. By contrast, aboriginal rights cases do not exclude oral testimony for purported lack of reliability or corroboration; on the contrary, they consistently support their *admission* based on its probative value to the determination of whether a claimant tribe or group engaged in exclusive long-term use and occupation of the designated areas. While the court in *Zuni Tribe of New Mexico v. United States*, 12 Cl. Ct. 607 (1987), observed that "oral recounting through generations can become less accurate," it went on to find the recounted history at issue to be "of evidentiary probity," noting that "the Zunis as to members of other tribes, the transmission of historical data and tradition was always of great import with little, if any, reliance placed on written documentation." *Zuni*, 12 Cl. Ct. at 617 n.12. In *Warm Springs*, the court expressly stated that testimony regarding knowledge of use and occupancy that has been passed down orally through the generations "is entitled to some weight…*particularly* when it is corroborated by documents and the testimony of others." *Warm Springs*, 1966 WL 8893 at *12 (emphasis added).

---

*Transp.*, 973 F. Supp. 1058 (M.D. Ga. 1997), the other hearsay case cited by Defendant, did not involve claims of aboriginal rights.

Similarly, in *Pueblo de Zia*, the court made clear that corroboration may *enhance* the value accorded oral testimony, but that even standing alone such testimony should be given consideration. *Pueblo de Zia*, 1964 WL 8577 at *2; *see id.* ("Where the testimony of Indians several generations removed is corroborated, its weight must be correspondingly increased. And a demonstration of accuracy of a part of such testimony imparts credence to the whole in the absence of controverting evidence.").

Defendant's argument regarding corroborating evidence ultimately goes to weight, not admissibility, and as such should not be decided at this stage of the proceedings. Plaintiffs are offering, and intend to introduce at trial, extensive corroborating evidence in the form of anthropological and archeological evidence, contemporary historical accounts, and other materials, documents, and testimony presented by Plaintiffs' expert witnesses. But the above case law makes clear that even if Plaintiffs were to offer the oral testimony of their native witnesses without any corroboration at all, such evidence should still be admitted and given due weight.

This is only reasonable, given the paucity, in many cases, of written documentation of the facts, events, and patterns—especially those that took place in pre-modern times and were recorded only by cultures based on oral tradition—that are most relevant to the issue of aboriginal rights. Moreover, as Plaintiffs' expert, Patricia Partnow, has testified and will testify at trial, many anthropologists have confirmed that among people with an oral tradition there is "quite a high degree of reliability" in preserving stories of events over the course of hundreds of years. *See* Deposition of Patricia Partnow ("Partnow Depo.") at 22:22-23:18; *cf. Zuni, supra*, 12 Cl. Ct. at 617 n.12. Particularly in light of these considerations, any rigid requirement of written corroboration would be wholly at odds with the liberal evidentiary standard that governs

aboriginal rights cases. Certainly it cannot constitute grounds for wholesale exclusion of oral histories. *See* Partnow Depo. at 24:1-8 ("So you have to use all those rules, but in fact to totally throw out oral history because it's not written is—I mean, you're losing a huge amount of knowledge but you're also privileging the observations of people who didn't speak the language and who were there for a short time and who had an ax to grind because they wanted to enslave these people.").

      B.      <u>Even Within the Framework of Modern Hearsay Rules, Oral Histories by Plaintiffs' Witnesses Would Fall Under the Rule 803(20) Exception.</u>

Even if one were to ignore the relaxed evidentiary standards and longstanding precedent of considering oral histories in aboriginal rights cases, the testimony at issue would fall within a recognized exception to the hearsay rule. Rule 803(20) of the Federal Rules of Evidence excepts from the general prohibition against hearsay testimony relating "reputation in a community, arising before the controversy, as to boundaries of or customs affecting lands in the community." The rationale for this rule lies in the perishable nature of boundary markers and the tendency of prolonged and constant community discussion to sift out erroneous facts, lending a trustworthiness to the residual facts ultimately accepted by the locality that allows these facts to be presented as evidence in a court of law. *See Wally v. United States*, 148 Ct. Cl. 371, 1960 WL 8541, at *2 (Ct. Cl. 1960) (discussing admissibility of evidence prior to enactment of Rule 803(20)).

Here, there is no question that the reputation and understanding in the Chugach community regarding the boundaries of their exclusive hunting and fishing areas arose long before this suit began, and have been carefully preserved through the generations. Further, the Advisory Committee's Notes to Rule 803(20) explain that "[t]rustworthiness in reputation evidence is found 'when the topic is such that the facts are likely to have been inquired about and

that persons having personal knowledge have disclosed facts which have thus been discussed in the community; and thus the community's conclusions if any has been found, is likely to be a trustworthy one.'" Fed. R. Evid. 803 advisory committee's notes (quoting 5 Wigmore § 1580 at 444). The same is true for the oral histories Plaintiffs seek to introduce into evidence. Traveling and fishing long distances offshore have always been central to the Chugach culture and way of life, and have therefore undoubtedly been a topic of general interest and discussion to the Chugach community since time immemorial. This provides further assurance that oral testimony regarding the reputed areas of offshore fishing in the Chugach community bears the earmarks of trustworthiness that characterize evidence excepted under Rule 803(20). Thus, even under the rubric of the federal evidentiary rules, the oral histories Defendant seeks to exclude would be properly admissible in a court of law. At the very least, they merit consideration on a case-by-case basis, not a blanket exclusion based on a broad assumption of hearsay.

## III.   EXCLUSION OF TRACY BUCK

In an unusual twist, the Government has moved to exclude its own F.R.C.P. 30(b)(6) designee,[2] Tracy Buck, from testifying at trial. The Government contends that the grounds for her exclusion are relevance and undue burden.

---

[2] Rule 30(b)(6) of the Federal Rules of Civil Procedure provides, in relevant part:
> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, *a governmental agency*, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization.

(Emphasis added.)

Ms. Buck's deposition was taken by Plaintiffs on June 11, 2008, pursuant to a deposition notice issued under Rule 30(b)(6) which required the Secretary of Commerce to designate one or more persons to testify on the following topics:

(1) the portions of Prince William Sound, Lower Cook Inlet, and the Gulf of Alaska over which the Department contends the United States has sovereignty;

(2) whether the Plaintiffs have aboriginal rights in the areas identified in category 1;

(3) whether the Plaintiffs used the waters identified in category 1 in an exclusive manner before 1900;

(4) any and all uses of the areas identified in category 1 by any tribes other than the Plaintiffs before 1900;

(5) whether the uses identified in category 4 refute Plaintiffs' claims to aboriginal rights;

(6) whether the Plaintiffs abandoned their aboriginal rights in any of the areas identified in category 1, and the dates and areas of any such abandonment;

(7) whether the Plaintiffs fished on the way to Middleton Island;

(8) any and all evidence of conflict between the Plaintiffs subgroups prior to 1900;

(9) whether the Plaintiffs historically fished for both halibut and sablefish from the OCS;

(10) prehistoric, historic, and/or contemporary fishing, hunting, or other natural resource exploitation practices or patterns of present or former members of the Native Villages of Eyak, Tatitlek, Chenega, Nanwalek, and Port Graham in the areas identified in category 1;

(11) prehistoric, historic, or contemporary claims to, use or defense of, or travel through, the areas identified in category 1 by present or former members of the Native Villages of Eyak, Tatitlek, Chenega, Nanwalek, and Port Graham;

(12) whether present or former members of the Native Villages of Eyak, Tatitlek, Chenega, Nanwalek, and Port Graham prehistorically and historically hunted and fished in the areas identified in category 1, and whether they continue to do so; and

(13) whether and how present or former members of the Native Villages of Eyak, Tatitlek, Chenega, Nanwalek, and Port Graham defined socioterritorial or sociopolitical boundaries of areas identified in category 1 in which they hunted and fished, and whether and how they excluded others. Pursuant to Rule 32(a)(3), Ms. Buck's deposition transcript may now be used by Plaintiffs at trial for "any purpose."

The Government, however, seeks to prevent Ms. Buck from having to testify in person at trial. The Government first argues that Ms. Buck's testimony would not be relevant. This argument is preposterous. As this Court can see, the topics listed above, on which Ms. Buck testified at her deposition, are *highly* relevant.[3] Indeed, they go to the very heart of this case. The Government argues that "Ms. Buck's understanding of Defendant's legal positions" are of "limited (if any) relevance" to this case.[4] But the Government fundamentally misunderstands the purpose of Rule 30(b)(6). Plaintiffs will not be calling Ms. Buck at trial to testify about her personal "understandings" of the Government's case, as if she were a third party offering opinion testimony.[5] Rather, as its 30(b)(6) designee, Ms. Buck's "understandings" are the Government's "understandings." That is, the testimony of Ms. Buck is deemed to be the testimony the

---

[3] *See* Fed. R. Evid. 401 (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").
[4] *Defendant's Pretrial Motion on Evidentiary Matters* at page 8.
[5] *Cf. Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (explaining that Rule 30(b)(6) designee does not give personal opinions, but presents entity's position on topics in deposition notice).

Government itself.[6]  And, contrary to what the Government suggests, there is no requirement that a 30(b)(6) designee have firsthand knowledge or involvement in the underlying transaction.[7]  Rather, the standard protocol is that a 30(b)(6) must prepare, as Ms. Buck did, in order to be able to fully and unevasively answer the questions posed as to the relevant subject matters.[8]

The Government also argues that it would be improper for Plaintiffs to inquire of Ms. Buck at trial regarding the Government's legal positions in this case.[9]  The Government fails to support this contention with any legal authority.  In any event, Plaintiffs do not intend to call Ms. Buck at trial to find out the Government's legal positions.  Rather, Ms. Buck would be called to testify regarding *the facts supporting* the Government's various legal positions or, to be more precise, the lack thereof, which obviously is fair game.[10]

Finally, the Government argues that it would be unduly burdened if Ms. Buck were required to testify at trial because she would be "diverted" from her "regular job duties."[11]  Of course, this is the case anytime a Rule 30(b)(6) witness and, in fact, most any witness has to testify in court.  For example, many of the lay witnesses testifying for the Plaintiffs will be forced to miss commercial fishing openers in order to appear in person at trial.  The Government does not cite even a single case where a governmental agency's Rule 30(b)(6) designee was excused from having to testify in person because he or she would be diverted from regular job duties.  Given that Ms. Buck is the spokesperson for the Government in this case, any burden to

---

[6]    *Cf. AG-Innovations, Inc. v. United States*, 82 Fed. Cl. 69, 80 (2008) ("[T]he testimony of the Rule 30(b)(6) designee is deemed to be the testimony of the corporation itself.") (citation omitted).
[7]    *See, e.g., PPM Finance, Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 894 (7th Cir. 2004).
[8]    *See Brazos*, 469 F.3d at 433.
[9]    *Defendant's Pretrial Motion on Evidentiary Matters* at page 7.
[10]   A review of the pages of Ms. Buck's deposition transcript designated by Plaintiffs confirmed that Ms. Buck was repeatedly asked about the *facts* supporting the Government's legal positions.
[11]   *Id.* at 8.

the Government in having to produce her as a witness at trial is far outweighed by her critical importance to this case.

## IV.     LIMITATION ON PLAINTIFFS' USE OF JEFF LEER

Defendant's motion to limit Plaintiffs' "use" of Jeff Leer is nothing more or less than an overreaching attempt at damage control. As the Court will recall, Plaintiffs initially included Mr. Leer on their preliminary witness list, but removed him when he informed Plaintiffs that he did not wish to testify or otherwise participate in this case on account of his poor health. Plaintiffs, who had no other reason to withdraw Mr. Leer as a witness, promptly notified Defendant that they were taking him off their list in deference to the wishes of Mr. Leer. Nevertheless, Defendant insisted on proceeding with Mr. Leer's deposition, even though it was noticed for the same day that Mr. Leer was scheduled to receive medical treatment in Seattle. Mr. Leer sought to accommodate Defendant by arranging to have his deposition taken in Seattle, but being understandably concerned about his ability to sustain a full day's worth of questioning, asked Plaintiffs' counsel to represent him and persuade Defendant—or, if necessary, the Court—to cancel his deposition. Defendant, however, proved intransigent, forcing Plaintiffs' counsel to file a motion to quash on behalf of Mr. Leer, which the Court denied. Defendant thereafter deposed Mr. Leer on June 20, 2008, for the full seven hours, and even attempted to exceed its allotted time.

Interestingly, it was only *after* Mr. Leer's deposition and after Plaintiffs reinstated Mr. Leer on their Final Witness List that Defendant brought its present motion, which seeks preemptively to cherry-pick Mr. Leer's potential testimony to exclude all areas that could possibly be unfavorable to Defendant's case. Defendant, having previously accused Plaintiffs' counsel of trying to "have it both ways" with respect to Mr. Leer, is now doing precisely that.

The same Defendant who, prior to Mr. Leer's deposition, refused to specify what kind of testimony it wished to obtain from Mr. Leer and proclaimed that it had never "acted in any way to limit the permissible uses of this deposition," see Opposition to Motion to Quash Leer Deposition at 6, is now strenuously attempting to preclude Plaintiffs from examining their own witness on the subjects on which he has *the most relevant factual information to offer* and on which Defendant itself deposed him *at length*—i.e., the uniqueness of the Chugach language and the names they gave to topographical features in Prince William Sound, Lower Cook Inlet, and the Gulf of Alaska, the distribution and meanings of these names, and the fact that the Chugach were the only group to give names to features such as Middleton Island, Wessels Reef, and Seal Rocks. Nor has Defendant offered any legal foundation for its motion other than an unsupported hearsay objection and suggestion that Mr. Leer's anticipated testimony falls within the province of an expert witness.[12] In fact, either a lay or expert witness may properly offer opinion testimony based on firsthand observation and experience, and thus, "in cases involving opinions based on various types of extensive experience in a given industry or on a specific subject, the opinions properly could have been classified as either lay or expert." 29 Charles A. Wright & Victor J. Gould, Fed. Prac. & Proc: Evid. § 6253; *see, e.g., Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403 (3rd Cir. 1980) (in breach of contract action, trial court did not err in permitting plaintiff's accountant to offer lay opinion concerning lost profits based on his

---

[12] It is worth noting that Defendants' own witness list describes Mr. Leer's anticipated testimony very similarly to Plaintiffs', stating that it will call him to testify "regarding place names (also known as toponyms) found in Prince William Sound, the Gulf of Alaska, and Lower Cook Inlet; his work in this area; the meanings of these place names in their native languages (if any); and the appropriateness of Plaintiffs' expert Matt Ganley's reliance on his work and the work of others in this field." Defendant's Final Witness List at 4, ¶ 6. To the extent that Defendant objects that Mr. Leer was not retained as an expert and therefore cannot testify on the areas identified by Plaintiffs, this objection would equally appear to preclude most, if not all, of the testimony Defendant seeks to obtain from him as an adverse witness. Clearly it is not the subject matter but rather the tenor and direction of Mr. Leer's testimony that Defendant wishes to limit and, in effect, control.

knowledge of the plaintiff's account books; fact that he "might have been able to qualify as an expert witness on the use of accepted accounting principles in the calculation of business losses should not have prevented his testifying on the basis of his knowledge of appellant's records about how lost profits could be calculated from the data contained therein.").

The truth of the matter is that Defendant got what it wanted, found it did not like it, and is now trying to erase, or at least minimize, the consequences of its actions. Plaintiffs for their part never had any motives for removing Mr. Leer from their witness list other than Mr. Leer's own request that he be released for personal health reasons. Now that Defendant has had *full opportunity* to depose him, there is no reason whatsoever to impose any constraints on his testimony at trial. Plaintiffs' ability to examine their own witness should not be compromised simply because Defendant made a strategic miscalculation. Accordingly, the Court should deny Defendant's motion to limit Mr. Leer's testimony.

## V. EXCLUSION OF UNDISCLOSED EVIDENCE

Finally, the Government has moved to exclude any "undisclosed evidence" from the Plaintiffs' affirmative case.[13] The Government does not identify any specific items of "undisclosed evidence" that it seeks to exclude, but has moved "prophylacticly" to "avoid surprise at trial."[14]

As a preliminary matter, Plaintiffs submit that there simply is no "undisclosed" evidence for this Court to exclude, given the extensive discovery that was conducted by both parties in this case. For example, the Government raises the possibility that the Plaintiffs may offer oral histories at trial that "have not been properly disclosed."[15] But the Government conducted lengthy depositions of each and every one of the elders that will be testifying on behalf of the

---

[13] *Defendant's Pretrial Motion on Evidentiary Matters* at pages 10-12.
[14] *Id.* at 10.
[15] *Id.*

Eyak v. Gutierrez, A98-365-CV (HRH)  Page 13 of 16
Plaintiffs' Response to Defendants' Pretrial
Motion of Evidentiary Matters

Plaintiffs in this case.  The Government had ample opportunity to inquire and, did in fact inquire, of the elders regarding the relevant oral histories.  Thus, it would be disingenuous for the Government to claim "unfair surprise" at trial.  Moreover, it is patently unreasonable to try to exclude all oral history not "disclosed" – it would not be possible for any witness to have recited every single oral history they know within the time frame allotted for deposition under the federal rules.  In addition, Plaintiffs may present oral history about many subjects on which they were not questioned.  Clearly Plaintiffs should be permitted to present such evidence.

In the event that Plaintiffs (or the Government) seek to offer any "undisclosed evidence" at trial, this Court would have to look to Rule 37(c)(1) in deciding whether to exclude the evidence.  That rule provides that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless.*"  (Emphasis added.)  Plaintiffs submit that the proper approach would be for this Court to deal with any objections to "undisclosed evidence" at trial on a case-by-case basis, so that Plaintiffs might have a chance to meaningfully respond and demonstrate that any failure to disclose was "substantially justified" or "harmless."  It is simply impossible for the Plaintiffs to respond at this juncture when the Government has not identified which mysterious items of "undisclosed evidence" it seeks to exclude.  Of course, what is good for the goose is good for the gander, so this Court should employ the same approach if the Government seeks to offer any "undisclosed evidence" at trial.

## VI. CONCLUSION

Defendant seeks to exclude whole categories of evidence that will aid the Court in its decisionmaking. Plaintiffs, on the other hand, prefer to admit this evidence and let the chips fall where they may. Therefore, Defendant's motion should be denied in its entirety.

DATED this 5th day of August 2008.

        s/nlandreth

        Natalie A. Landreth (Bar no. 0405020)
        NATIVE AMERICAN RIGHTS FUND
        801 B Street, Suite 401
        Phone: (907) 276-0680
        Facsimile: (907) 276-2466
        Email: landreth@narf.org

**CERTIFICATE OF SERVICE**

I, Natalie Landreth, certify that a true and correct copy of Plaintiffs' Response to Defendant's Pretrial Motion On Evidentiary Matters was served on August 5, 2008 pursuant to the Court's electronic filing procedures upon the following:

Dean Dunsmore (dean.dunsmore@usdoj.gov)

lorraine.carter@usdoj.gov

Beverly F. Li (beverly.li@usdoj.gov)

efile_nrs.enrd@usdoj.gov

Brian McLachlan (brian.mclachlan@usdoj.gov)

                                              s/nlandreth